(No. 4604.   November 7, 1927.)

A. M. MORELAND and M. K. MADDEN, Respondents, v. O. Y. MASON, Sheriff of Canyon County, Idaho, D. P. SNYDER, J. L. BAKER, and THOMAS E. BUCKNER, Appellants.

[260 Pac. 1035.]

MASTER AND SERVANT — "INDEPENDENT CONTRACTOR" — PRINCIPAL AND AGENT—"AGENT"—SALES TITLE IN PRINCIPAL—NONSUIT—INSTRUCTIONS—WITNESSES—REPETITION OF QUESTIONS—APPEAL AND ERROR — FAILURE TO DISCUSS ASSIGNMENT — WRONGFUL EXECUTION — MEASURE OF DAMAGES.

1. An "independent contractor" is defined as one who rendered services in the course of an occupation representing the will of the employer only as to the results of the work, and not as to the means by which it is accomplished.

2. An "agent" is defined as one who acts for another by authority from him; one who undertakes to transact business or manage some affair for another by authority and on account of the latter.

3. Where plaintiffs being engaged in the business of buying and shipping livestock at C., in so doing employed W. and G. to buy stock for them, plaintiffs furnishing the money necessary for purchases and giving instructions as to price to be paid, W. and G., in purchasing, giving their check and it being taken care of by plaintiffs, plaintiffs bearing the loss in case of cattle bought at more than market price, and only giving W. and G. the difference between the price paid and market price where bought below market price, W. and G., whose functions were purely of a business character and representing plaintiffs in buying, were agents of plaintiffs, and not independent contractors, so that

title to cattle, attached as theirs while being brought in by them, was in plaintiffs, though the names of the principals were not disclosed to the persons of whom W. and G. bought, and though they performed the labor required in bringing in the stock to shipping point, and were not controlled by plaintiffs in the manner in which this was done.

4. Defendants' motion for nonsuit was properly denied, the evidence warranting verdict for plaintiffs.

5. The evidence showing agency as matter of law, and the jury in effect having found its existence, any error in instruction as to its existence was not prejudicial.

6. There was no error in sustaining objection to questions where it was a mere repetition of questions which witness had answered.

7. Consideration of assignment omitted, appellant not having discussed it or cited any authorities that instruction complained of does not correctly state the law.

8. There was no error in refusing a requested instruction, it having no application to the issues.

9. In the absence of proof of special damages, the measure of damages of the owners of property which was sold on execution against another is what it cost them to regain possession of the property, or what they paid therefor at the execution sale, they having been the purchasers thereat.

Publisher's Note.

1. Who are independent contractors, see notes in 76 **Am. St.** 382; 19 Ann. Cas. 3; Ann. Cas. 1913B, 573; Ann. Cas. 1916D, 222; Ann. Cas. 1918C, 627, 663, 669, 672; 65 L. R. A. 445; 17 **L. R. A.,** N. S., 371; 19 A. L. R. 227. See, also, 14 R. C. L. 67.

2. See 21 **R. C. L.** 817.

3. Independent contractors distinguished from servants and agents, see note in 65 L. R. A. 447. Circumstances under which existence of the relationship of employer and independent contractor is predicable, see note in 19 **A. L. R.** 1168.

6. See 28 R. C. L. 586.

8. See 14 R. C. L. 784.

See Agency, 2 C. J., sec. 4, p. 420, n. 15, 16; sec. 10, p. 424, n. 47; sec. 729, p. 959, n. 94; sec. 740, p. 970, n. 76.

Appeal and Error, 3 C. J., sec. 1593, p. 1431, n. 90; 4 C. J., sec. 3057, p. 1071, n. 31.

Independent, 31 C. J., p. 473, n. 26.

Sheriffs and Constables, 35 Cyc., p. 1853, n. **15.**

Trial, 38 Cyc., p. 1613, n. 16.

Witnesses, 40 Cyc., p. 2437, n. 93.

APPEAL from the District Court of the Seventh Judicial District, for Canyon County. Hon. Ed. L. Bryan, Judge.

Action for damages. Judgment for plaintiffs. *Affirmed.*

Buckner & Warren, for Appellants.

Where the testimony relied upon to establish the alleged agency is clear and uncontradicted, the construction of such testimony is for the court and not for the jury, and the question whether or not there is any evidence tending to prove the existence of the agency is a matter for the court. (2 C. J. 960, sec. 731, notes 10 and 11; 14 R. C. L. 79, note 4; *Goble v. Boise-Payette Lumber Co.,* 38 Ida. 525, 224 Pac. 439; *Whitson v. Pacific Nash Motor Co.,* 37 Ida. 204, 215 Pac. 846; *Green v. Soule,* 145 Cal. 96, 78 Pac. 337; *Smith v. Humphreyville,* 47 Tex. Civ. App. 140, 104 S. W. 495.)

Where a party buys personal property and pays for it with his personal check, and the other party agrees to advance the purchase money and take the property purchased at the market price, the relation of buyer and seller arises, and not that of principal and agent. (Dec. Dig., Sales, Key 7, 8, 52–55; Dec. Dig., Prin. & Agent, Key 3–3; *St. Louis & S. F. R. Co. v. Blocker* (Tex.), 138 S. W. 156; *Davis & Hamm Commission Co. v. Mt. Vernon Bank,* 63 Tex. Civ. App. 347, 133 S. W. 448; *Whitson v. Pacific Nash Motor Co., supra; Daniel v. Maddox Rucker Banking Co.,* 124 Ga. 1063, 53 S. E. 573; 2 C. J. 422, sec. 8 and notes; 31 Cyc. 1198–1205, and notes.)

An independent contractor is one who, exercising an independent employment, contracts to do· a piece of work according to his own methods and without being subject to the control of his employer except as to the result of his work. (14 R. C. L. 67, note 6; 19 A. L. R. 226, 1168, and following: *Goble v. Boise-Payette Lumber Co., supra;* 31 Cyc. 1198; 2 C. J. 424, sec. 10.)

Walter Griffiths, for Respondents.

A verdict by a jury supported by any substantial evidence will not be set aside or disturbed on appeal. (C. S., sec. 7170; *Herculith v. Gustafson*, 22 Ida. 537, 126 Pac. 1050; *Pomeroy v. Gordan*, 25 Ida. 279, 137 Pac. 888.)

The question of agency is a question to be determined by the verdict of the jury, after having received proper instructions from the court. When there is any evidence adduced tending to prove the existence of a disputed agency, its existence or nonexistence is a question of fact for the jury, aided by proper instructions from the court. (2 C. J. 960, sec. 731; *Morgan v. Neal*, 7 Ida. 626, 65 Pac. 66; *Thomas v. Moody*, 57 Cal. 215; *Wilson v. Haun*, 97 Kan. 445, 155 Pac. 798; *Sims v. Frew*, 24 Cal. App. 725, 142 Pac. 106; *Cook v. Smith & Stimpson*, 73 Ill. App. 483; *Darrin v. Whittingham*, 107 Md. 46, 68 Atl. 269; *J. J. Quinlan & Co. v. Holbrook*, 162 Fed. 272, 89 C. C. A. 252; *Stout v. Bolin*, 101 Kan. 594, 168 Pac. 676; *Vaughan v. Hinkle*, 131 Ark. 197, 198 S. W. 705.)

BABCOCK, Commissioner.—This action was brought by respondents to recover damages which they claim to have sustained by reason of the conversion by appellants of sixteen head of cattle claimed to be the property of respondents. Five hundred dollars is sought as general damages claimed to be the value of the cattle, and $100 as special damages by reason of the arrangement for the shipping of the cattle by respondents being defeated.

The cattle in question had been seized by the appellant, O. Y. Mason, as sheriff of Canyon county, under a writ of attachment issued out of the probate court of said county in aid of an action brought by the appellant, D. P. Snyder, against G. H. and W. H. McWilliams, and Gladys McWilliams, defendants; and the appellant, Mason, as such sheriff, afterwards, by virtue of an execution issued out of the probate court upon a judgment regularly entered in said court in said action, sold the cattle for the sum of

$401.50. Complaint was filed March 3, 1924, and an answer was filed thereto by appellants here, denying the conversion, respondents' ownership of the cattle, their value, and the suffering of loss by respondents.

At the close of the evidence appellants moved for a non-suit which was denied as to appellants, O. Y. Mason and D. P. Snyder, but sustained as to defendants, J. L. Baker and Thomas E. Buckner. A verdict was returned in favor of respondents and judgment thereon was entered for $445.40, and costs. This appeal is from that judgment.

The evidence on the part of the respondents was to the effect that at the time of the alleged conversion, and some time prior thereto, the respondents were engaged in the business of buying and shipping livestock at Caldwell, Idaho, and in so doing employed W. H. McWilliams and G. H. McWilliams to buy stock for them under an arrangement whereby the respondents furnished the money necessary for such purchases. The McWilliamses, in purchasing cattle, gave their personal check on the bank and the same would be taken care of by the respondents. Before stock was purchased Moreland and Madden would instruct the McWilliamses as to the price per pound to be paid for different classes of stock. The stock when purchased by the McWilliamses would be brought to the shipping pens of Moreland & Madden and would be left there and fed until time for shipment. Moreland and Madden paid the expenses of bringing the stock in and feeding and caring for them after they were put in the yards. Just before the stock were loaded and shipped, they would be weighed and the market price determined. If the stock had been purchased at a certain price per head and at less than the market price, the McWilliamses would be paid the difference. If the price paid per head was more than the market price, Moreland and Mason would bear the loss.

There is no question raised as to the validity of the proceedings in regard to the issuance and levy of the writ of attachment or the judgment in the probate court in favor of appellant Snyder against the McWilliamses, the sale under execution issued on the judgment, or the price received by

the sheriff at such sale, these facts being stipulated by the parties at the trial. The position of respondents is that the McWilliamses were the agents of Moreland and Madden and as such bought the cattle for their principals. The appellants contend that the arrangement between respondents and the McWilliamses, as shown by the evidence, under the law was not that of agency, but that the McWilliamses were acting in the capacity of independent contractors.

Appellants make the following assignments of error: 1. The court erred in overruling defendants' motion for nonsuit. 2. The verdict of the jury and the judgment of the court are contrary to the law and the evidence in the following particulars, to wit: (a) The evidence conclusively shows that the cattle were bought by the McWilliamses for the purpose of selling them to Madden & Moreland at a profit, and that the cattle, at the time of the seizure by the sheriff, were the property of the defendants, the McWilliamses; (b) the evidence conclusively shows that the McWilliamses were independent contractors and not agents of Madden & Moreland and that the relationship between Madden & Moreland and the McWilliamses was that of buyer and seller of cattle, and not that of principal and agent. 3. The court erred in giving instruction number 3:

"You are instructed that the relationship of principal and agent is created by an agreement between the principal and the agent, and the continued existence of that relationship is dependent upon the agreement between the two parties."

4. The court erred in sustaining plaintiffs' objection to the question: "If you had gone out of sight, whose loss would it have been?" 5. The court erred in entering judgment for the plaintiffs. 6. The court erred in giving instruction number 4:

"You are instructed that it is not necessary that the party with whom the agent is dealing should know of the relationship of the principal and agent, or should know that the agent is dealing with him as an agent for a principal, in order for the relationship of principal and agent to exist. If you find from the evidence in this case that the cattle in question were purchased by the two McWilliamses for

the plaintiffs, Moreland and Madden, and as the plaintiffs' agents, then the cattle became the property of the plaintiffs and the defendants had no right to take the cattle without plaintiff's consent.''

7. The court erred in giving instruction number 8:

''The jury are instructed that if you find from the evidence that the plaintiffs were the owners of the cattle on the 23d day of March, 1924, that they are entitled to what special damages they have proved by the evidence to have sustained, but in no case can they recover any special damages unless you find by the preponderance of the evidence that the defendants knew or were notified of the special circumstances giving rise to that special damage, before the special stock train left on the morning of March 25, 1924.''

8. The court erred in refusing to give defendants' requested instruction number 2:

''The jury are instructed that if you find from the evidence that there was an agreement for the sale of the cattle by McWilliams to the plaintiffs, A. M. Moreland and M. K. Madden, and the cattle were in a deliverable condition, yet there still remains some act to be done like weighing and grading to determine the quality and price of the cattle, then the title will not pass until such act is done. And if you further find from the evidence that the cattle sold had not been weighed, or the quality or price determined before the sheriff attached the cattle, then you should find for the defendants.''

9. The court erred in refusing to give defendants' requested instruction number 5:

''The jury are instructed that in case you should find that the plaintiffs were the owners of the cattle on the 23d day of March, 1924, that their measure of damage is limited to the reasonable market value of the cattle on said 23d day of March, 1924, and if you further find that the cattle were purchased at the sheriff's sale for the plaintiffs, then their measure of damages would not exceed the amount plaintiffs paid for said cattle at the sheriff's sale, for those cattle bought by the plaintiffs, and in addition thereto, the market value of the cattle not purchased by the plaintiffs.''

In regard to the first assignment of error: It is contended by the appellant that the only evidence relative to the arrangement that existed between the respondents and the McWilliamses for the purchase of cattle was that given by the respondents and their agents, the McWilliamses; that there was no conflict in the evidence and that the same conclusively showed that the McWilliamses were independent contractors and not the agents of respondents, and there being no conflict in the evidence, the same presented a question of law to be determined by the court.

[1] An independent contractor is defined as one who renders services in the course of an occupation representing the will of the employer only as to the results of the work and not as to the means by which it is accomplished. (4 Words & Phrases, p. 3542.)

[2] An agent is defined as one who acts for another by authority from him; one who undertakes to transact some business or manage some affair for another by authority and on account of the latter. (1 Words & Phrases, p. 262.)

The distinction between an independent contractor and an agent is not always easy to determine and there is no uniform criterion by which they can be differentiated. But it would seem that where the agent's functions are concerned, either entirely or mainly with the execution of contracts on behalf of the principal, although not subject to the control of the principal with respect to the details of the work, he is an agent and not an independent contractor.

By some authorities the distinction is made on the footing that the normal function of an agent is that of representing his principal in transaction arising out of business, trade or commerce, while the normal function of an independent contractor is that of performing work which is predominately physical in its nature, and the contrast is not necessarily destroyed by the circumstance that the agent may perform a certain amount of manual labor by himself or others in carrying on the business.

[3] Considering the testimony in the case in the light of these definitions, the McWilliamses were the agents of the

respondents and were not independent contractors. They were controlled by respondents as to the price they were to pay for the cattle, in that they should not pay more than the market price, and if they did respondents bore the loss. It is true the names of the principals were not disclosed to the people of whom they made purchases of stock, but under the facts of the case they were authorized to buy stock for the respondents and the latter were liable for the payment of the purchase price to the seller. Their functions were purely of a business character in representing respondents in the business transaction of buying stock at not more than the market price, and the fact that the McWilliamses performed the labor required in bringing stock to the shipping point and were not controlled by respondents in the manner in which this was done did not constitute the McWilliamses independent contractors.

It follows, therefore, that the McWilliamses being the agents of the respondents in the purchase of the cattle in question, and not independent contractors, the title to the cattle, at the time of the levy of the attachment and execution in the case of *D. P. Snyder v. McWilliams*, was not in the defendants, the McWilliamses, but in respondents.

[4, 5] The court did not err in denying appellants' motion for nonsuit. Inasmuch as the finding of this court on the law and the facts is adverse to appellant, and to the effect that the McWilliamses were the agents of the respondents, and the jury by their verdict having found in effect that they were the agents of the respondents, it follows that the appellants were not prejudiced by the action of the court in giving instruction number three complained of.

[6] In regard to assignment number four, that the court erred in sustaining the objection to the question, "If you had gone out of sight, whose loss would it have been," the witness had already, in answer to several questions, stated that if there was any loss on the cattle, it was to be borne by respondents. The question was a mere repetition, and there was no error on the part of the court in sustaining the objection.

[7] In regard to assignment number six, the appellants do not discuss the same nor cite any authorities to the effect that the instruction complained of therein does not correctly state the law.

[8] In regard to assignment number eight, the court did not err in refusing to give defendants' requested instruction number two as the same has no application to the issues involved.

[9] Upon examination of assignments seven and nine, we are of the opinion that appellants' requested instruction number five correctly states the measure of respondents' damages and should have been given instead of instruction number eight. It was stipulated that the respondents bought the cattle at the execution sale from the sheriff and paid therefor the sum of $401.50, and there was no proof as to any special damage suffered by respondents. The rule for measuring respondents' damage was what it cost them to regain possession of the cattle. (34 Cyc. 1570.)

It follows from what has been said that in the submission of this case to another jury, the only question for their determination would be the amount of damages to be assessed against appellants, and this amount, under the stipulated facts and the rule correctly measuring the same, would be $401.50.

We therefore recommend that the cause be remanded to the district court, with instruction to modify its judgment by reducing the amount thereof from $445.40 to $401.50, and with such modification, that the judgment be affirmed with costs to respondents.

Featherstone and Adair, CC., concur.

PER CURIAM.—The foregoing is approved as the opinion of the court. The cause is remanded to the district court, with instruction to modify its judgment by reducing the amount thereof from $445.40 to $401.50, and with such modification, the judgment is affirmed with costs to respondents.