**PURYEAR et al. v. MARTIN et al.**
(No. 7271.)

Court of Civil Appeals of Texas. Austin. Oct. 31, 1928.

Rehearing Denied Dec. 19, 1928.

Hamilton, Frank & Hamilton, of Dallas, for appellant.

Polk Shelton, Audley Harris, and Warren W. Moore, all of Austin, for appellees.

BAUGH, J. Viola Martin was injured in an automobile collision in the city of Austin, on June 18, 1926. The car in which she was riding was owned by Dewey Puryear, and was being driven by his cousin, Grady Puryear, at the time.

In response to special issues, the jury found that Grady Puryear was guilty of negligence proximately causing her injuries, that he was driving said car at the time under the direction of Dewey Puryear, and that she was entitled to $1,000 as compensation for her injuries. From a judgment for that amount against both Dewey Puryear and Grady Puryear, Dewey Puryear alone has appealed.

Several questions are raised on the appeal, but we have concluded that one of them is determinative of the case, and shall confine our discussion to that issue—that is, Was Grady Puryear at the time of the collision the agent of Dewey Puryear?

The following facts are either admitted or not controverted: On the evening of the collision, a number of guests had assembled in several cars at the home of one Gerrish in North Austin, amongst whom were Grady Puryear, Viola Martin and husband, and Dewey Puryear and wife. Grady and Dewey Puryear were cousins, and were also cousins to appellee Viola Martin. Dewey Puryear was at the time a partner in business with Mr. Gerrish, the host, and, though a guest on the occasion, was there primarily to discuss business matters with his partner, and appears to have spent most of the evening in doing so. The other guests, after a buffet luncheon, were entertained with music and dancing. Some time about 9:30 or 10 p. m., Grady Puryear and Viola Martin left the Gerrish home in Dewey Puryear's car to go to the Martin home in another part of the city for additional phonograph records. While en route and while driving at a high rate of speed on Guadalupe street alongside the University of Texas campus, the collision occurred.

Viola Martin testified, on the issue here under consideration, as follows: "We were dancing by Victrola music that night, and after the Victrola had been played and the dance had gone on for a while Mr. Gerrish said that he would like to have some more records, as they didn't have but a few, and they were tired of playing the same ones over, I suppose; so I said that I had some and would get them if some one would take me after them. Grady then said that he would take me, and Dewey told him to take his, Dewey's, car and take me down after the records, and then Grady did so. I got into Dewey's car because Dewey told us to take his car and go after the records."

On cross-examination, she testified: "When we got out there I do not think that I asked Grady which car we were going in; I don't think I said anything; I think I just got in the car. I knew which car to get into because he was with me. We did not have any conversation at all about the car we would get in, outside of them asking Dewey in the kitchen for the car."

On this point Grady Puryear testified: "Starting in at the time we were at Mr. Gerrish's home, while we were dancing out there and I was standing over on one side of the room, Mrs. Martin came to me and asked me if I would take her out to her home, and I asked her what she wanted to go for, and she said some records. I told her I would take her down to her home if she wished it. Before we went outside no question came up about what car we would use; we did not know what car we would use when we went outside, and I did not say a word to Dewey about using his car before we went outside, but it so happened that his car was next to the street and very handy to get to, so we used his car and went on down in it."

Dewey Puryear testified: "I knew when

Grady and Mrs. Martin left the house. I think at that time I was in the parlor; I think I was dancing at the time, and Mrs. Martin and Grady came out of the other room and said they were going after some records, and I said, 'Good,' and so that is the time they left the house. As to the first time I heard anything about any records, I heard Mrs. Martin speaking about wanting some records early in the evening, and the younger Mr. Gerrish, too, I think. I did not hear Mrs. Martin say anything about records more than once or twice. She said she wished we had some more records besides those old ones, and said she had some records at the house she would like to get and play. * * * The first time I knew that Grady had taken my car was when my wife and I went outside to leave to go home. * * * I did not tell Grady to use my car, and I did not at any time know that he had used it or was going to use it."

■ There was also evidence to corroborate the testimony of the Puryears, and to contradict that of Viola Martin as to whether Dewey Puryear ever authorized the use of his car on the trip in question. But, disregarding this and the testimony of the Puryears, and considering only the testimony favorable to the jury finding, we have concluded that no agency of Grady for Dewey Puryear is shown. We think it conclusively appears that the trip in question was an independent errand or enterprise of Viola Martin herself, voluntarily entered upon, or at most an enterprise of herself and her host, Mr. Gerrish, who owned and operated the Victrola and expressed a desire for more records. Dewey Puryear was at the Gerrish home primarily for business purposes, and was, under the uncontradicted testimony, perhaps less interested in the trip undertaken by Mrs. Martin than any of the guests present. And, under the uncontroverted facts and circumstances, as disclosed by the testimony of Mrs. Martin herself, whether Dewey voluntarily tendered the use of his car for the trip, or granted permission for its use upon request, the transaction constituted merely a loan or a permissive use of his automobile for the accommodation of Mrs. Martin, or that of herself and Mr. Gerrish, in which she and Grady Puryear became gratuitous bailees of the property. On cross-examination, she testified that others asked Dewey in the kitchen for the use of his car. And certainly, if she and Grady used his car without the knowledge or consent of Dewey Puryear, he would not be liable for the negligence of either of them.

■ The general rule is that, in the absence of liability imposed by statute, the owner of an automobile is not liable for the negligence of the party to whom the property is loaned, when using it upon an enterprise of his own. 42 C. J. 1115, and cases cited thereunder; Cal-

hoon v. Mining Co., 202 Mo. App. 564, 209 S. W. 318; 2 R. C. L. 1201. In 36 A. L. R. 1138 et seq., is found an extensive consideration of this question generally, with numerous cases cited.

This case is clearly distinguishable from Cannan v. Dupree (Tex. Civ. App.) 294 S. W. 298, relied upon by appellees. In that case the driver of the car was clearly on an enterprise directed by and at the express instance of the owner of the car, and engaged in for her benefit.

Several other propositions are presented, some of which we think would require a reversal of this case, but, under our conclusion above discussed, we deem it unnecessary to consider them here.

For the reasons stated, the judgment of the trial court is reversed, and judgment here rendered in favor of Dewey Puryear. Grady Puryear has not appealed, and the trial court's judgment as to him is not disturbed.

Reversed and rendered.