(Nos. 6399 and 6400. May 27, 1937.)

RICHARD GORTON, a Minor, by R. S. GORTON, His Father, as Guardian *Ad Litem,* Respondent, v. CHARLOTTE DOTY, Appellant, and R. S. GORTON, Respondent, v. CHARLOTTE DOTY, Appellant.

[69 Pac. (2d) 136.]

Merrill & Merrill, for Appellants.

O. R. Baum and L. E. Glennon, for Respondent.

HOLDEN, J.—In September, 1935, an action was commenced by R. S. Gorton, father of Richard Gorton, to recover expenses incurred by the father for hospitalization, physicians', surgeons', and nurses' fees, and another by the son, by his father as guardian *ad litem,* to recover damages for injuries sustained as a result of an accident. By stipulation the actions were consolidated for trial. Upon the trial of the cases so consolidated, the jury returned a verdict in favor of the father for $870 and another in favor of the son for $5,000. Separate judgments were then entered upon such verdicts. Thereafter a motion for a new trial was made and denied in each case. The cases come here upon an appeal from each judgment and order denying a new trial.

Counsel for the respective parties have stipulated that the appeals may be presented to this court upon the record in each case so consolidated, and upon the same assignments of error, briefs, and argument, with like effect as if assignments of error and briefs were prepared in each case. And inasmuch as the verdicts in each case were returned upon the same evidence, and the appeals are presented upon the same assignments of error and briefs, and the reversal of the judgment in one case would necessarily require a reversal in the other, for the purpose of discussion and decision, the appeals will be treated as a single appeal.

It appears that in September, 1934, Richard Gorton, a minor, was a junior in the Soda Springs High School and a member of the football team; that his high school team and the Paris High School team were scheduled to play a game of football at Paris on the 21st. Appellant was teaching at the Soda Springs High School and Russell Garst was coaching the Soda Springs team. On the day the game was played, the Soda Springs High School team was transported to and from Paris in privately owned automobiles. One of the automobiles used for that purpose was owned by appellant. Her car was driven by Mr. Garst, the coach of the Soda Springs High School team.

One of the most difficult questions, if not the most difficult, presented by the record, is, Was the coach, Russell Garst, the agent of appellant while and in driving her car from Soda Springs to Paris, and in returning to the point where the accident occurred?

Briefly stated, the facts bearing upon that question are as follows: That appellant knew the Soda Springs High School football team and the Paris High School football team were to play a game of football at Paris September 21, 1934; that she volunteered her car for use in transporting some of the members of the Soda Springs team to and from the game; that she asked the coach, Russell Garst, the day before the game, if he had all the cars necessary for the trip to Paris the next day; that he said he needed one more; that she told him he might use her car if he drove it; that she was not promised compensation for the use of her car and did not receive any; that the school district paid for the gasoline

used on the trip to and from the game; that she testified she loaned the car to Mr. Garst; that she had not employed Mr. Garst at any time and that she had not at any time "directed his work or his services, or what he was doing."

While the master is a species of principal and a servant is a species of agent (Am. Law. Inst., Restatement Agency, sec. 2, p. 11), the record before us does not present the question as to whether the customary relationship of master and servant did or did not exist between the appellant and Mr. Garst. Respondents do not bottom their right to recover upon the negligence of the coach, acting as the *servant* of appellant. They ground their right to recover upon the alleged negligence of the coach, acting as the *special agent* of appellant.

Broadly speaking, "agency" indicates the relation which exists where one person acts for another. It has these three principal forms: 1. The relation of principal and agent; 2. The relation of master and servant; and, 3. The relation of employer or proprietor and independent contractor. While all have points of similarity, there are, nevertheless, numerous differences. We are concerned here with the first form only.

Specifically, "agency" is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. (Restatement Agency, sec. 1, p. 7; *Sullivan v. Finch,* 140 Kan. 399, 36 Pac. (2d) 1023; *Georgeson v. Nielsen,* 214 Wis. 191, 252 N. W. 576.)

The above definition of "agency" is not in conflict with *Moreland v. Mason,* 45 Ida. 143, 260 Pac. 1035, cited and relied upon by appellant in support of her contention that the coach was not acting as her agent. That was an action to recover damages for the conversion of certain livestock. One of the questions presented for decision was whether certain buyers, the McWilliamses, were the agents of respondents in that case of independent contractors. The facts, briefly, bearing on the question, were, that respondents Moreland and Madden were engaged in the business of buying and shipping livestock at Caldwell, Idaho, and in so doing, employed W. H.

McWilliams and G. H. McWilliams to buy stock for them under any arrangement whereby the respondents furnished the money necessary for such purchases; that the McWilliamses in purchasing cattle, gave their personal checks on the bank and the same were taken care of by respondents; that before stock were purchased, respondents would instruct the McWilliamses as to the price per pound to be paid for different classes of stock; that the stock when purchased were taken to the shipping pens of respondents and left there and fed until time for shipment; that respondents paid such expenses and the expense in feeding and caring for the stock after they were put in the yards; that just before the stock were loaded and shipped they would be weighed and the market price determined; that if the stock had been purchased at a certain price per head and at less than the market price, the McWilliamses would be paid the difference; that if the price paid per head was more than the market price, re-respondents would bear the loss.

An examination of the Moreland case, *supra,* will at once disclose that this court made no attempt to define the term ''agency,'' in all its aspects. This court held, and correctly so, that one who undertakes to transact some business or manage some affair for another by authority and on account of the latter, is an agent, and held that under the above-stated facts and circumstances, the McWilliamses were the agents of respondents, Moreland and Madden. But this court did not thereby hold that the relationship of principal and agent must necessarily involve some matter of business, but only that where one undertakes to transact some business or manage some affair for another by authority and on account of the latter, the relationship of principal and agent arises.

To enable the Soda Springs football team to play football at Paris, it had to be transported to Paris. Automobiles were to be used and another car was needed. At that juncture, appellant volunteered the use of her car. For what purpose? Necessarily for the purpose of furnishing additional transportation. Appellant, of course, could have driven the car herself, but instead of doing that, she designated the driver (Russell Garst) and, in doing so, made it a

condition precedent that the person she designated should drive her car. That appellant thereby at least consented that Russell Garst should act for her and in her behalf, in driving her car to and from the football game, is clear from her act in volunteering the use of her car upon the express condition that he should drive it, and, further, that Mr. Garst consented to so act for appellant is equally clear by his act in driving the car. It is not essential to the existence of authority that there be a contract between principal and agent or that the agent promise to act as such (Restatement Agency, secs. 15, 16, pp. 50–54), nor is it essential to the relationship of principal and agent that they, or either, receive compensation (Restatement Agency, sec. 16, p. 53).

Furthermore, this court held in *Willi v. Schaefer Hitchcock Co.*, 53 Ida. 367, 25 Pac. (2d) 167, in harmony with the clear weight of authority, that the fact of ownership alone (conceded here), regardless of the presence or absence of the owner in the car at the time of the accident, establishes a *prima facie* case against the owner for the reason that the presumption arises that the driver is the agent of the owner. And we further held that where the facts are such that the trial court is in doubt as to whether the driver of an automobile is the agent of the owner, it is proper to submit the question to the jury.

It is vigorously contended, however, that the facts and circumstances bearing upon the question under discussion show appellant loaned her car to Mr. Garst. A determination of that question makes it necessary to quote appellant's testimony. She testified as follows:

"Q. On or about the 21st day of September, 1934, state whether or not you permitted Russell Garst to use that car?

"A. I did.

"Q. Under what circumstances?

"A. I loaned it to him.

"Q. When did you loan it to him? Was it that day, or the day before?

"A. On the day before I told him he might have it the next day.

"Q. Did you receive any compensation, or were you promised any compensation, for its use?

"A. No, sir.

"Q. What were the circumstances under which you permitted him to take it?

"A. Well,—"

After having so testified, appellant was then asked:

"Q. You may relate the conversation with him, if there was such conversation.

"A. I asked him if he had all the cars necessary for his trip to Paris the next day. He said he needed one more. I said that he might use mine if he drove it. That was the extent of it."

While it appears that appellant first testified that she permitted Russell Garst to use her car and also that she loaned it to him, it further appears that when she was immediately afterward asked to state the conversation she had with the coach about the matter, she stated that she asked him if he had all the cars necessary for the trip to Paris the next day, that he said he needed one more, that she said he might use her car if he drove it, and, finally, she said that that was the extent of it. It is clear, then, that appellant intended, in relating the conversation she had with the coach, to state the circumstances fully, because, after having testified to the conversation, she concluded by saying, "That was the extent of it." Thus she gave the jury to understand that those were the circumstances, and all of the circumstances, under which Russell Garst drove her car to the football game. If the appellant fully and correctly related the conversation she had with the coach and the circumstances under which he drove her car, as she unquestionably undertook to, and did, do, it follows that, as a matter of fact, she did not say anything whatever to him about loaning her car and he said nothing whatever to her about borrowing it.

We therefore conclude the evidence sufficiently supports the finding of the jury that the relationship of principal and agent existed between appellant and Russell Garst.

Appellant complains that the evidence does not show the coach was negligent and, further, "that the evidence affirmatively showed that if Garst was negligent at the time of the accident then Richard Gorton was guilty of contributory negligence . . . . "

The record shows that Richard Gorton, at the time of the accident, had driven a car for a period of between three and four years; that he had ridden in cars when others were driving; that he estimated the coach was driving the car at a speed of approximately 55 miles an hour when the accident occurred; also that he wasn't paying any particular attention to the speed at which the car was being driven and didn't know how fast it was going; that he was seated in the front seat between the coach and another member of the football team; that there were two members of the team in the back seat; that the highway where the accident occurred, and for several miles in either direction, was smooth and oil-surfaced; that the highway was dry and that there was no other traffic at that point at the time of the accident; that the accident occurred on a sharp ten per cent curve just after dark; that the car lights were on; that Richard Gorton made no objection to the speed at which the car was being driven; that the coach did not ask the boys to go with him; that he told them "we were going with him"; that when the car reached the curve it moved straight ahead from the hard surface on to the shoulder, and from the shoulder into a borrow-pit and along a bank at the side of the road, until it reached the end of the bank where it left the highway and continued on down a steep slope and into a gulch some distance from the highway; that the automobile was practically a new one and was in good condition; that the coach died shortly after the accident from injuries received.

In support of her contention that the evidence failed to prove the coach was negligent, appellant points to the above-stated testimony of Richard Gorton to the effect that at the time of the accident he wasn't paying any particular attention to the speed of the automobile, that he didn't know how fast the car was going, and that then, and after so testifying, he estimated the speed of the car at approximately 55 miles an hour. It is then argued that "such testimony, it would seem, is wholly insufficient upon which to predicate a finding touching speed and the jury could not have concluded therefrom with any reasonable degree of definiteness or certainty what speed the car was being driven at the time of the accident."

In determining whether the evidence is sufficient to establish negligence, all the facts and circumstances surrounding the accident must be weighed and considered. The accident occurred on an "abrupt," sharp, ten per cent curve. The highway was smooth and oil-surfaced. There was no traffic. The car was practically new and in good condition. There is no evidence that the coach deliberately drove the car off the highway nor that any part or parts of its mechanism broke. These circumstances, considered in connection with Richard Gorton's testimony fixing the approximate speed of the car, irresistibly lead to the conclusion that the accident was caused by a combination of speed and "abrupt" curve. Furthermore, the circumstances strongly corroborate young Gorton's testimony in respect to speed and, standing alone, without that testimony, point to excessive speed as the actual cause of the accident. It is evident, to say the least, that reasonable minds might well differ as to whether the coach was negligent, in which case it was a question of fact for the jury. (*Dillon v. Brooks,* 51 Ida. 510, 6 Pac. (2d) 851; *Pipher v. Carpenter,* 51 Ida. 548, 7 Pac. (2d) 589.)

But it is contended "that one of two conclusions must be drawn, either that Garst was not negligent or that if he were negligent Gorton was in as good a position to discern this negligence as the driver himself and having acquiesced in it and offered no remonstrance, should certainly be denied recovery under *Dale v. Jaeger,* 44 Ida. 576, 258 Pac. 1081, and *Dillon v. Brooks,* 51 Ida. 510, 6 Pac. (2d) 851."

We will first briefly state the evidence upon which that contention is based. Young Gorton testified that he was not conscious of any danger immediately prior to the accident; that nothing had happened to indicate that the coach might lose control of the car; that he had been over the road a number of times; that he did not say anything to the coach about the speed at which he was driving; that "the first thing I noticed was the side of the bank coming up, and going off the road, and then I noticed him (the coach) trying to pull the car back on the road from the shoulder, the gravel, and skidding into the bank." From which it appears that prior to the accident this boy was not conscious of, and the first notice he had of, impending danger, came at a time when

it was too late to protest. Moreover, he was not in a true sense a gratuitous guest. He was a member of the football team, under the control of the coach. The coach directed Richard and the other boys to get into the car and team discipline demanded that they obey, and they did.

In the first case relied upon by appellant this court held that "the law is well settled by authorities too numerous to cite that a gratuitous guest cannot recover for his host's negligent operation of an automobile, if, conscious of apparent danger or faced with such conditions and circumstances as would herald danger to a reasonably prudent man, he fails opportunely to protest or acquiesces therein."

And in *Dillon v. Brooks, supra,* we pointed out that in *Dale v. Jaeger, supra,* "the negligence of the driver was so gross, and so apparent, that the guest, by not protesting, was guilty of contributory negligence, barring a recovery." Assuming, but not conceding, that Richard was a gratuitous guest, the evidence in the case at bar does not show that the negligence of the coach prior to the accident was so gross or so apparent, that Richard "by not protesting, was guilty of contributory negligence, barring a recovery." After so directing attention to the facts in the Dale case, *supra,* we held that if there is a question as to whether in the first instance the driver was negligent, and secondly, whether the guest reasonably knew or should have known of the danger, or had reasonable time to effectively protest, the question should be left to the jury. Here, to repeat, Richard testified that he was not conscious of danger until the accident was actually happening, and, while there is some slight evidence from which an inference might be drawn that the coach was driving fast before the accident, there is substantial evidence to sustain the finding of the jury that Richard was not guilty of contributory negligence.

During the course of the closing argument of counsel for respondent, an objection was made by counsel for appellant to certain remarks addressed to the jury. Thereupon the trial court ordered a brief recess and took up such objection in chambers with counsel for the respective parties, whereupon the following proceedings took place outside of the presence of the jury:

"Mr. GLENNON: What I said, your Honor, was in response to counsel's repeated charges that the plaintiff was attempting to mulch (mulct) the defendant in damages, and I stated to the jury in substance, 'That you have a right to draw on your experience as business men in determining the facts in this case, and that you know from your experience as business men that prudent automobile owners usually protect themselves against just such contingencies as are involved in this case.'"

Following that statement by Senator Glennon, counsel for appellant agreed it was substantially correct. Upon returning to the courtroom, the trial judge denied appellant's motion for a mistrial and then instructed the reporter to read the above quoted remarks to the jury, after which the court instructed the jury to disregard the remarks.

Appellant contends that the trial court erred in denying her motion for a mistrial.

Funk & Wagnalls New Standard Dictionary defines the word mulct: "1. To sentence to a pecuniary penalty or forfeiture as a punishment; fine; hence, to fine unjustly, as, to *mulct* the prisoner in $100. 2. To punish." Appellant had testified during the trial that she volunteered the use of her car. To charge, then, that respondent was attempting to "mulct" her in damages carried the inference that respondent was attempting to punish her in damages for having volunteered the use of her car for the commendable purpose of supplying additional transportation for the home town football team.

And it will be noted that Mr. Glennon stated, and the record shows no denial, that the above-quoted remarks were made by him only in response to *repeated* charges by appellant's counsel that respondent was attempting to *mulct* appellant in damages. There is no evidence whatever in the record justifying such charges. They were made during the course of the argument of counsel for appellant, and were as fully and clearly outside the record as the remarks of counsel for respondent. It was a case of meeting improper argument with improper argument. The remarks complained of were provoked by the conduct of counsel for appellant. Hence, we conclude that appellant has no just cause for complaint.

Having reached that conclusion, we find it unnecessary to review the cases cited by counsel for the respective parties.

▪▪ Appellant insists that the court erred in giving the following instruction:

"You are instructed, gentlemen of the jury, that agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

And appellant further insists that the alleged error was intensified by the instruction that:

"If you find from the evidence that Russell Garst, now deceased, was at the time of the accident the agent of the defendant, then the defendant is chargeable with the acts of said agent as fully and to the same extent as though she had been driving the automobile herself."

It is pointed out that the first instruction quoted "entirely ignores the 'scope of the employment,' " and that the second has nothing to say "touching the scope of the employment," and then it is argued that "under this instruction (the second) a master would be held responsible if his agent was at the time of the accident engaged in private affairs."

Appellant's objections to these instructions apparently are based upon the assumption that the relationship of principal and agent cannot exist, unless at the same time the relationship of master and servant is also shown to exist. While one may be both a servant and an agent, it is also true that one may be an agent without being a "servant," in the sense that word is used in defining the usual and customary relationship of master and servant.

There is practically no limit to the circumstances under which the relationship of principal and agent may arise. To attempt to give an all-inclusive definition would confuse rather than clarify. The definition of the term "agency" stated in the first above-quoted instruction is substantially the same as that we approved in discussing the question as to whether the relationship of principal and agent existed between appellant and Mr. Garst, and therefore must be held to be correct.

After having given the jury a correct definition of the term "agency," the court by the second instruction above-quoted, instructed the jury that if they found from the evidence that Russell Garst was, at the time of the accident, the agent of appellant, then that she was chargeable with the acts of her agent as fully and to the same extent as though she had been driving the automobile herself. In other words, the trial court gave the jury a correct definition of the term "agency" to apply to the evidence, and then, in effect, instructed the jury that if they found, upon the application of that definition to the evidence, Russell Garst was the agent of appellant, she was as fully chargeable with his acts as though she had been driving the car herself, which is unquestionably the law.

At the close of the trial appellant requested nine instructions. The first, if given, would have instructed the jury that the legal status of Richard Gorton while riding in the car at the time of the accident was that of a gratuitous guest. The second instructed substantially in the language of sec. 48–901, I. C. A., that,

"No person transported by the owner or operator of motor vehicle as his guest without payment for transportation shall have a cause of damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his gross negligence, or his reckless disregard of the rights of others."

And the third instructed,

"That a gratuitous guest may not recover for his host's negligence in operation of an automobile, if, conscious of apparent danger, or faced with such conditions and circumstances as would herald danger to a reasonably prudent man, he fails to opportunely protest or acquiesces therein."

All were refused and the refusal is assigned as error. We considered the question as to whether or not Richard Gorton was a gratuitous guest in discussing appellant's contention that Richard was guilty of contributory negligence, and held that he was not in a true sense a gratuitous guest, from which it follows that the court properly refused to give the requested instructions.

 The fourth requested instruction was given. The fifth was refused as requested, but given as modified. It would have instructed the jury, if given,

"That an agent or a servant is one who by reason of contract, express or implied, is acting for another and doing the work through agreement which would otherwise devolve upon the master to do. The relationship must furthermore be such that at the time of the accident the master has the power of direction and control of the servant to the extent that the servant is not lawfully acting independently of the master."

That instruction is objectionable because it proceeds upon the assumption that the relationship of principal and agent cannot exist independent of the relationship of master and servant. It is also objectionable in that it requires that one must be acting for another by *agreement* and doing *work* which "would otherwise devolve upon the master to do," and for the further reason that it is not essential to the existence of authority that there be a contract between principal and agent, nor that one must be doing "work," in the sense in which that word is ordinarily used, "which would otherwise devolve upon the master to do." The instruction was refused but given in a modified form. No error was committed by refusing to give the instruction in the form requested.

 The sixth and seventh requested instructions were, like the fifth, framed upon the theory that the relationship of principal and agent cannot exist independent of the relationship of master and servant and, therefore, were properly refused.

 Appellant's eighth request instructed,

"That an agent is one who has been delegated or directed by a person who has the power of directing and controlling his work to do certain work which would otherwise devolve upon the master to do."

In other words, the instruction, by inference, would have required the jury to find that appellant directed the coach to do certain work for her, to wit, drive her car to the football game, which "work," if not performed by the coach, would devolve upon her. Thus, in effect, the instruction re-

quired the jury to find that the relationship of master and servant existed between the coach and appellant, and was consequently properly refused.

And, while the court refused to give appellant's ninth and last requested instruction covering contributory negligence, in the form requested, it changed and modified the instruction so that it correctly stated the law, and then gave it to the jury. Hence, no error was committed.

We have carefully examined the instructions given by the trial court, and find that it fully and correctly instructed the jury upon all the issues involved in the case.

We turn now to appellant's contention that the verdict for $5,000 is excessive. Dr. Kackley, a witness for respondent, testified as follows:

"Q. State to the jury just what condition you found Mr. Richard Gorton in.

"A. Fracture of the femur.

"Q. By the 'femur' you mean what, Doctor?

"A. The thigh bone.

. . . . . . . . . . . . .

"Q. Was that a complete fracture?

"A. Yes, sir; a complete simple fracture. By a simple fracture I mean one that the bone doesn't penetrate through the flesh into the outer air.

"Q. Was it a shattered fracture, or not?

"A. It was more or less transverse. It was slightly shattered, but it was shattered in such a way you couldn't get an interlock in there of the fragments.

"Q. It was so broken you couldn't get an interlocking?

"A. No, sir."

. . . . . . . . . . . . .

"Q. Doctor, what effect does a fracture of the kind you have related that Richard Gorton had have upon one's nervous system?

"A. Well, I don't know, Judge, that the fracture has very much to do with it. It is the conditions that lead up to the fracture more than the fracture itself.

"Q. Then just state what effect that would have upon his nervous system?

"A. A condition like under the conditions he had his leg fractured, there was quite a lot of shock and mental condition there tumbling down that bank. It affected the boy's mind; it affected his mind during the time he was under treatment.

"Q. And the general effect of that would be what, Doctor Kackley?

"A. There was no external appliances we could put on that that would hold the bone in line, and during the night he would go partly to sleep and partly delirious and he would jump and that would throw the ends of the bone off. As I stated before there was nothing, no splints or anything to hold it. The bones had to be jammed up together, and then in this delirium he would think he was tumbling down the bank. He told us several times he was rolling down that hill out there in the car and he would jump and holler and that would throw the bones off. It wouldn't make any difference whether we put plaster or external splints of any kind, he would throw that off. Later on, in order to hold that, we had to cut down and put a steel plate on.

"Q. Now, state generally what effect such an accident would have upon the general health in the future?

"A. It wouldn't be good at all, that is, his mental condition especially,—just about like one of those shell shocks during the war. I never saw one of them recover.

"Q. What have you to say in reference to Richard Gorton completely recovering in so far as being nervous as a result of the accident?

"A. He hasn't yet."

Richard Gorton testified that he was in the hospital twelve weeks; that he used crutches until about two weeks before school started, about a year after the accident; that he suffered from leg swelling; that his muscles ached whenever there was a change of weather; that at the time of the trial, April 21, 1936, he could only walk from five to six blocks without suffering pain in the injured leg; that after having spent twelve weeks in the hospital, he went back for about four days; that at the time of the trial his leg ached as much as it did following the accident.

Where an injury has been sustained, damages should be computed, ascertained, and awarded on the basis, as nearly as possible, of compensating the injured person for his injuries, and for the pain he has suffered and will suffer on account of the injury. (*Maloney v. Winston Bros. Co.*, 18 Ida. 740, 111 Pac. 1080, 47 L. R. A., N. S., 634; *Ramon v. Interstate Utilities Co.*, 31 Ida. 117, 170 Pac. 88.)

It appearing that respondent experienced three months of pain and suffering in the hospital, that the shock of the accident was similar in effect to shell shock, that at the time of the trial he had not fully recovered from the effects of the shock, and that he could only walk from five to six blocks without pain, we cannot say that the verdict is excessive. Damages are susceptible to proof only with an approximation of certainty, and it is solely for the jury to estimate them as best they can by reasonable probabilities, based upon their sound judgment as to what would be just and proper under all the circumstances, which may not be disturbed where, as in the case at bar, there is no showing of bias or prejudice. (*Reinhold v. Spencer*, 53 Ida. 688, 700, 26 Pac. (2d) 796.)

While we have not discussed all the errors assigned by appellant, we have, nevertheless, carefully considered them, but find no substantial error.

The judgments and orders are affirmed with costs to respondents.

Morgan, C. J., and Ailshie and Givens, JJ., concur.

Petition for rehearing denied.

BUDGE, J., Dissenting.—I am unable to concur in the majority opinion.

As I read the entire record there is a total lack of evidence to support the allegation in the complaint that Garst was the agent of appellant Doty at or prior to the time of the accident in which respondent Richard Gorton was injured and as such agent was acting within the scope of his authority. An agent is one who acts for another by authority from him, one who undertakes to transact business or manage some affair for another by authority and on account of

the latter. (*Moreland v. Mason,* 45 Ida. 143, 260 Pac. 1035.) Agency means more than mere passive permission. It involves request, instruction or command. (*Klee v. United States,* 53 Fed. (2d) 58.) The facts are not in dispute. Briefly they may be stated as follows: Appellant Doty and Garst were teachers at the Soda Springs High School, not in the same but in different departments, the former being a teacher of Latin and Home Economics and the latter acting as Coach of Athletics and a teacher of Mathematics. Neither had any official connection with the other. Their employment was entirely separate and distinct. Miss Doty had no connection with, nor duty with respect to, the athletic activities of the school. Upon the day preceding the game, to which reference is made in the majority opinion, in a general conversation between Garst and Miss Doty she asked Garst if he had sufficient cars to transport the boys to Paris. Garst replied that he needed one more car and in answer to this statement Miss Doty stated he *might* use her car if he drove it himself. The next day Garst took Miss Doty's car to a garage in Soda Springs and purchased gasoline charging it to the school district, the district subsequently paying for the same. Miss Doty received no compensation and none was to be paid her for the use of her car. As I read the record she simply loaned her car to Garst to enable him to furnish means of transportation for the team from Soda Springs to Paris. It was nothing more or less than a kindly gesture on her part to be helpful to Garst, the athletic coach, in arranging transportation for the team. The mere fact that she stated to Garst that he should drive the care was a mere precaution upon her part that the car should not be driven by any one of the young boys,—a perfectly natural thing for her to do. It is principally and particularly upon this statement of fact that the majority opinion holds that the relationship of principal and agent was created and that Garst became the agent of Miss Doty, authorized by her to undertake the transportation of the boys from Soda Springs to Paris for her and on her behalf. In other words, Miss Doty is held legally liable for each and every act done or performed by Garst as though she had been personally present and personally performed each and every act that was done or per-

formed by Garst, this in the absence of any contractual relationship between her and Garst or between her and the school district. The rule would seem to be that one who borrows a car for his own use is a gratuitous bailee and not an agent of the owner. (*Gochee v. Wagoner*, 257 N. Y. 344, 178 N. E. 553.) In *Puryear v. Martin*, (Tex. Civ. App.) 13 S. W. (2d) 203, it is held:

"In the absence of liability imposed by statute, the owner of an automobile is not liable for the negligence of the party to whom the property is loaned when using it upon an enterprise of his own."

In *Schneider v. McAleer*, 39 Ariz. 190, 4 Pac. (2d) 903, in the course of the opinion it is held:

"The relation of master and servant, or of employer and employee, was not established by the evidence. It does show the relation of bailor and bailee. The car was loaned to Mrs. Miller to go on an errand for her sole benefit, and while she had it in her possession, and before her errand was completed, the accident occurred in which the appellant and his car was damaged. In such circumstances, the law is well stated in 42 C. J. 1116, sec. 873, to be: 'except as liability may be imposed by statute, or the owner may have been guilty of personal negligence, as where he has knowingly entrusted his vehicle to an incompetent driver, the owner is not liable for the negligence of a hirer or borrower to whom he had relinquished control over the vehicle, and who is using it exclusively for his own purposes.' "

Appellant loaned her car to Garst, not for her benefit, but for his benefit or for the benefit of the school district. Garst was over the age of sixteen years, a careful driver, competent in every way to be entrusted with the loan of the car, and the accident happened before the purposes of the loan had been completed. Clearly the relationship of master and servant or that of principal and agent did not exist nor did any other legal relationship exist such as would create a liability against appellant. The rule announced in the foregoing case is applicable to the facts of the instant case. It is held in *S. B. McMaster, Inc., v. Chevrolet Motor Co.*, 3 Fed. (2d) 469, that:

"There are two distinctly essential elements in an 'agency.' The first is that the agent acts, not for himself, but, for another; and the second is that his acts, within the scope of his authority must be binding upon his principal."

To the same effect see the following cases: *Cornish v. Kreuer,* 179 Minn. 60, 228 N. W. 445; *Posey v. Krogh,* 65 N. D. 490, 259 N. W. 757; *Reis v. Gentry,* (Mo.) 87 S. W. (2d) 1037; *Packard-Louisville Motor Co. v. O'Neal,* 248 Ky. 438, 58 S. W. (2d) 630.

I am also of the opinion the judgment should be reversed because of the prejudicial remarks of one of counsel for respondent while making his closing argument to the jury as follows:

"That you have a right to draw on your experience as business men in determining the facts in this case and what you know from your experience as business men that prudent automobile owners usually protect themselves against just such contingencies as are involved in this case."

Upon the making of the above-quoted remarks by respondent's counsel appellant moved for a mistrial basing his motion upon the theory that they suggested that the appellant was carrying insurance and would not have to pay any judgment the jury might render, and, that there was no evidence to support such a theory. The court refused to declare a mistrial but directed counsel for respondent not to argue the point further and directed the jury to disregard that part of counsel's argument. However, the prejudicial effect of the remarks was not cured by the court instructing the jury to disregard that part of counsel's argument. Nothing can be gleaned from the remarks made by learned counsel other than that he, intentionally or otherwise, clearly and unmistakably impressed upon the minds of the jurors that appellant carried insurance on her car and that she personally would not be called upon to pay any verdict that might be rendered against her. Error for injecting the question of insurance in a case of this character is quite clearly stated in Cyclopedia of Automobile Law, Blashfield, Ninth Volume, section 6291, as follows:

"The general rule of almost uniform enforcement in motor vehicle accident cases is that the jury should not be informed

of the fact that the defendant is protected by indemnity insurance, either by the *voir dire* examination of the witnesses, or statements of counsel during the trial. Evidence purposely intended to show the defendant carried liability insurance on the vehicle involved in the case is, therefore, never admissible in support of a charge of negligence. . . . .

"The error in getting such evidence before the jury in most states is reversible, notwithstanding the Court may instruct the jury not to consider the same in arriving at their verdict."

It is held in *Texas & N. O. R. Co. v. Owens,* (Tex. Civ. App.) 54 S. W. (2d) 848, that:

"Attorney's improper argument requires reversal if there is reasonable doubt of harmful effect."

What the verdict of the jury would have been had these remarks not have been made is impossible to determine. As I read and understand the statement, and I am satisfied it would be so understood by the ordinary juror, it in effect stated that Miss Doty being a prudent person had protected herself by insurance against just such an unfortunate accident as happened upon the occasion to which reference has been made. The rule stated in *Wagnon v. Brown,* 169 Okl. 292, 36 Pac. (2d) 723, is as follows:

"In personal injury action, remark of plaintiff's attorney in closing argument designed to acquaint jury with fact that defendants were protected by insurance held prejudicial error."

The following cases support the rule above stated: *Schellenberg v. Southern California Music Co.,* 139 Cal. App. 777, 35 Pac. (2d) 156; *Landry v. Hubert,* 100 Vt. 268, 137 Atl. 97; *Leonard v. Stepp,* 175 Okl. 487, 53 Pac. (2d) 1110; *Hankins v. Hall,* 176 Okl. 79, 54 Pac. (2d) 609; *Beatrice Creamery Co. v. Goldman,* 175 Okl. 300, 52 Pac. (2d) 1033; *Gaskill v. Amadon,* 179 Wash. 375, 38 Pac. (2d) 229; *Curtis v. Ficken,* 52 Ida. 426, 16 Pac. (2d) 977.

An examination of the instructions given discloses the fact that nothing is said in any of them with respect to the law applicable, provided the car was only loaned by Miss Doty to Garst. In other words, the trial court failed to instruct

upon appellant's theory of the case. The rule is stated in 14 R. C. L., p. 799, sec. 58, as follows:

"A party to a suit is entitled to have instructions given at his request presenting his theory of the case and based upon the pleadings and proof. If his opponent relies on a different theory he likewise may rely on instructions conforming thereto. A party is also entitled to have the law applied to the facts of his case, provided he requests a special charge, even though the Court may be of the opinion that such fact is not established by a preponderance of the evidence, and a refusal to charge the jury on a point material to the cause and upon which evidence has been received is error."

Appellant offered instruction number 7, which was refused, and which reads as follows:

"You are instructed, Gentlemen of the Jury, that under the law of Idaho an owner of an automobile who loans it to a person over the age of sixteen years is not liable for the negligence of the driver of said car, unless at the time of loaning said car the owner should have reasonably expected the driver to have operated the car negligently. If, therefore, you find in this case that Charlotte Doty loaned the car to Russell Garst and Russell Garst appeared to her to have been a reasonably prudent driver and that the said Russell Garst was not in the employ or engaged in the business of said Charlotte Doty at the time of said accident, then you must find for the defendant even though you should find the said Russell Garst was negligent."

Appellant had positively testified that Garst was approximately 22 years of age, that she loaned the car to Garst, and that she understood him to be a careful driver. The evidence is undisputed that Garst was not in the employ or engaged in the business of appellant at the time of the accident. Appellant was entitled to have the above instruction given, the rule of law being to the effect that if the car was loaned, if Garst was not in the employ or engaged in the business of appellant, and although Garst was negligent, appellant could not be held liable in damages as a result of the accident. Garst was in the employ of the school district, engaged by the school district to coach athletics, with authority to transport

the team in competitive athletic contests. Acting under such employment he borrowed appellant's car, not to engage in any business for appellant nor in connection with any duty she had to perform. The school district through Garst made it possible, by purchasing gasoline, for the car to be used. If there was a relationship of principal and agent it existed between the school district and Garst and not between Garst and appellant.

The judgment should be reversed and the cause remanded for further proceedings as herein indicated.