## C. M. KEYS COMMISSION CO. v. MILLER.

No. 7017—Opinion Filed May 23, 1916.

(157 Pac. 1029.)

### Corporations—Managing Agent—Drafts.

K. was a live stock commission company. G. was a cattle buyer. K.'s manager told G. to buy cattle, draw drafts on K. in payment therefor, and that such drafts would be honored. Acting under such authority, G. bought cattle from M., representing to M. that he was buying for K. M., relying on the truth of such representation, delivered the cattle to G., and accepted G.'s draft on K. in payment therefor. Later, but while said cattle were in the stock pens in the neighborhood in which they were bought, G. called up K.'s manager, by phone, told him of the purchase of the cattle from M., and that he had given M. a draft on K. in payment therefor, and asked for instructions as to when he should ship said cattle, together with others. Whereupon K.'s manager told G. to "let them come right in." The only profit K. could derive from its arrangement with G. would be from the commissions and charges it would collect from G. from the sale of cattle purchased by G. and consigned to it for sale on the market. Held, K. is liable to M. for the payment of the draft drawn on it by G. to pay for the cattle.

(Syllabus by Wilson, C.)

Error from County Court, Oklahoma County; John W. Hayson, Judge.

Action by H. R. Miller against the C. M. Keys Commission Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Hainer, Burns & Toney, for plaintiff in error.

W. H. Zwick and Abernathy & Howell, for defendant in error.

Opinion by WILSON, C. Plaintiff in error was defendant below, and defendant in error was plaintiff. Defendant was a live stock commission company doing business in Oklahoma City. Some time prior to the transaction involved in this suit, one Gay was in the Oklahoma City office of the defendant company, and was asked by one Witherspoon, who was the secretary and treasurer and the local managing officer of said company, why he, Gay, did not go to work, to which Gay answered that he did not have the money. Witherspoon then told Gay that he would honor his drafts, whereupon Gay said he would go out and see what he could buy, meaning, as the evidence clearly shows,

that he would go out and see what cattle he could buy. Later Gay negotiated with the plaintiff for the purchase of some cattle owned by the plaintiff, telling plaintiff that he was buying for the Keys Commission Company of Oklahoma City, and finally purchased four cows and three yearlings from plaintiff, plaintiff believing at the time that he was selling the cattle to the commission company through Gay, as its agent. Upon the sale of the cattle being consummated, Gay delivered plaintiff a draft on the defendant company for $224, the purchase price of said cattle. Soon after purchasing the cattle Gay took them to the stock pens in the neighborhood of plaintiff's farm, but before they were shipped, he called the defendant company over the phone, at its expense, and told Witherspoon of his purchase of the plaintiff's cattle, that he had paid for them with a draft on the defendant company, and asked for advice as to when they should be shipped to defendant at Oklahoma City, and was advised by Witherspoon to ship at once, whereupon the cattle purchased from plaintiff, together with others, were shipped to defendant at Oklahoma City and received by it. It appears from the testimony that the only profit the defendant company was entitled to make out of its transaction with Gay was the commissions and yardage per head regularly charged by it in its live stock commission business. Soon after receiving the draft given to him by Gay in payment for his cattle the plaintiff deposited it in a bank, but in due course of business it was dishonored and protested for non-payment, and this action in the lower court was to recover the amount of the draft and the protest fees.

The only question for the determination of this court is whether the evidence offered in the trial of the case was sufficient to sustain the verdict of the jury on the theory that Gay was the agent of the defendant in the purchase of the cattle, or that his acts in so doing were ratified by it. With reference to Gay's authority to buy cattle and pay for them by drafts on the Keys Commission Company the following testimony was given by Mr. Gay:

"Q. Now, with reference to the giving of this draft, now what was your agreement with Mr. Witherspoon, if you ever had any with Witherspoon, for you to pay your expenses and your authority to draw drafts on the Keys Commission Company? A. About some time in September or the 1st of October I was in the Keys Commission Company's office, and Mr. Witherspoon asked me why I was not at work, and I told him that I did not have the money to work on, and he told me that he would pay the drafts; that he

would honor my drafts. Q. For what? A. For cattle, for stock, but never for expenses. I had been buying cattle and some hogs, and sometimes drove them in, and he was asking me why I did not go to work. I had driven in some cattle and some few hogs. Q. Well, what else? A. Well, I told him that I did not have the money, and he told me that he would honor my drafts, and I told him all right, that I would go out and see what I could buy for."

This testimony was uncontradicted. It later developed that the only profit the commission company would derive from this arrangement would be the commissions and charges it would collect for the sale of the cattle to be shipped to it by Gay to be sold, and that upon the sales being made the company would deduct from the proceeds thereof the money advanced on the drafts given in payment for the cattle and their regular commissions and charges, and credit the balance to Gay on his account. The transaction involved in this case occurred on December 30, 1913, and between that time and the last of September or the first of October, preceding that date, Gay had purchased cattle under his arrangement with the company, and had drawn drafts on the company in payment therefor in amounts aggregating about $5,000, all of which had been honored by the company except the draft in the instant case and a small draft given by one Robinett, for cattle purchased about the time the Miller cattle were purchased and which were apparently a part of the shipment to the company in which the Miller cattle were included.

"Agency, in its broadest sense, includes every relation in which one person acts for or represents another." 1 C. J. 419; 31 Cyc. 1189.

The defendant was a live stock commission company. Gay was a cattle buyer. If a commission company, with no other object in view than to extend its business, authorizes another to go out and buy cattle and bind the company for the payment of the purchase price thereof by drawing drafts on it in favor of the persons from whom the cattle are purchased, such company is thereby estopped to deny the agency of the person so authorized as against one who, relying on the truthful statement of such person that he has authority to draw drafts on the commission company in payment for cattle purchased by him, sells such person cattle and receives in payment therefor the draft of such person on such company. In the instant case, the defendant company having authorized Gay to go out and buy cattle and pay for them with drafts drawn on the company, it thereby expressly created him

its agent to create a liability against it in the transaction of a business in which it expected to reap a profit, and however loose and improvident such an arrangement may have been, as between the commission company and Gay, it was an express grant of authority by the exercise of which Gay had the right to bind the company to pay for cattle which he might buy in pursuance of such arrangement. See C. M. Keys Com. Co. v. Beatty, 42 Okla. 721, 142 Pac. 1102.

It is true that what Gay told Miller about his authority was, as evidence coming from Miller, to establish agency, purely hearsay, and not competent to establish the agency, but, Gay having been given by the company authority to bind it, and having told Miller about it, Miller had the right to believe him and rely on his statement, and, having relied on Gay's statement as to the authority given him to buy cattle and pay for them with drafts drawn on the company and signed by himself and having acted on that statement, it being true, and sold and delivered the cattle to Gay, all that was said and done in connection with that transaction was a part of the res gestae and was admissible in evidence as such.

Not only did the uncontradicted evidence in the case establish that the company authorized Gay to go out and buy cattle and pay for them with drafts drawn on it, which it agreed to pay, but after Miller's cattle had been bought by Gay and paid for with a draft drawn by Gay on defendant company, and before they had been shipped to the defendant, and while they were still in the neighborhood in which they had been purchased and could have been conveniently returned to the owner had Gay been informed that the draft given by him in payment therefor would not be honored, he Gay, called defendant's managing officer at Oklahoma City over the phone and told him that he had bought Miller's cattle and given the draft sued on in payment therefor, and with that knowledge in his possession Witherspoon instructed Gay to "let them come right in," and they were at once shipped to the defendant company at Oklahoma City, and received by it to be disposed of in accordance with the agreement between it and Gay. That conduct was a ratification of the act of Gay in giving the draft sued on in payment for Miller's cattle and rendered the company liable for the payment thereof. J. I. Case Threshing Mach. Co. v. Lyons & Co., 40 Okla. 356, 138 Pac. 167; Whitcomb v. Oller et al., 41 Okla. 331, 137 Pac. 709; C., R. I. & Pac. Ry. Co. v. Newburn, 39 Okla. 704, 136 Pac. 174.

Having come to this conclusion, we deem it unnecessary to consider in this opinion plaintiff in error's objection to the two instructions complained of by it.

The judgment appealed from should be affirmed, and we so recommend.

By the Court: It is so ordered.