## GREAT AMERICAN INDEMNITY CO. v. DEATHERAGE.

### No. 24855.   Nov. 26, 1935.

Hal Crouch and Phil Landa, for plaintiff in error.

Roy F. Ford (Leslie W. Lisle, of counsel), for defendant in error.

PER CURIAM. This cause of action, in so far as this appeal is concerned, arose out of the garnishment proceedings instituted by the defendant in error, L. H. Deatherage, against the plaintiff in error, Great American Indemnity Company, in an attempt to realize on a judgment which the defendant in error had obtained against the Atlantic Pipe & Supply Company.

In the lower court L. H. Deatherage, as plaintiff, had obtained judgment against the Atlantic Pipe & Supply Company in the sum of $6,250, as damages for personal injury. Said judgment being unsatisfied, garnishment proceedings were started and garnishment summons was served upon the plaintiff in error; to the answer of the garnishee denying liability, the plaintiff gave notice and elected to take issue. The matter was tried before the court and judgment rendered for the plaintiff against plaintiff in error for the sum of $5,000. Motion for new trial was overruled, and the garnishee appeals to this court.

The first question presented to the court by the plaintiff in error is: Did the court err in overruling the demurrer of the garnishee to the evidence of the plaintiff and in failing to render judgment in its favor under the terms of the policy of insurance issued by the garnishee.

The Atlantic Pipe & Supply Company, defendant in the lower court, had purchased from the garnishee a policy of insurance or indemnity bond to protect it against just such incident as occurred in this matter. The plaintiff in error contends that a technical construction of their policy of insurance precludes a recovery under this policy of a loss sustained in this class of cases. A careful examination of the policy of insurance reveals the fact that if the interpretation placed upon this policy by the company is correct, the Atlantic Pipe & Supply Company obtained no protection under this policy of insurance. The court looks with disfavor upon a technical construction of a policy that would relieve the company of its responsibility after a loss has occurred under the policy. And any question arising under the terms of the policy is construed strictly against the insurer.

In the policy the insurer agreed:

"1. To pay all sums which the assured shall become liable to pay as damages imposed by law for bodily injuries, including death at any time resulting therefrom, suffered by any person or persons not in the employ of the assured, by reason of and during the progress of the work described in Statement No. 3 of the Schedule, which work has been let or sublet by the assured to independent contractors or independent subcontractors, as the result of accidents occurring during the policy period at the location set forth in said statement, up to an amount not exceeding the limit of liability as expressed in Statement No. 5 of the schedule of Statements.

"2. To defend in the name and on behalf of the assured all claims or suits for damages for such injuries or death for which the assured is, or is alleged to be liable, and to furnish appeal bonds (or pay the premium thereon) for an amount commensurate with the limits of the coverage hereunder in connection with such suits.

"3. To pay in addition to damages all taxed costs in any legal proceedings defended by the company, all expenses incurred by the company for investigation, negotiation or defense, all expenses incurred with the company's written consent, and all interest accruing from any judgment until the company has paid, tendered or deposited in court, such part of such judgment as does not exceed the limit of the company's liability thereon. * * *"

It was also provided that:

"This policy does not cover * * * 3. Loss from the liability for, or any suit for damages based on injuries or death, (a) caused by an employee of the assured. * * *"

The evidence is undisputed that upon the filing of the action and service upon the defendant, the insurer was notified in writing of the pendency of the action and that it refused to appear and defend the action. Under the above-quoted provisions of policy, upon the assurer being notified of the pendency of this action, it was its duty to appear and defend the action, provided, of course, that the policy was in effect, and such was its duty whether or not it was liable under the terms of the policy. The language of paragraph No. 2, quoted above, "or is alleged to be liable," clearly shows this to be true. The insurer, therefore, is bound by the judgment against the defendant as to the issues determined by such judgment to the amount of the coverage provided in said policy of $5,000. We must therefore determine what issues were determined by this judgment. The petition charged that the injuries and damages "were caused wholly, directly, and proximately by and on account of the negligent acts of the defendant, its agents, servants and employees, and also the negligent acts of the defendant, its

agents, servants and employees, and also the negligent acts of the said John F. Greer, and his agents, servants and employees, and that the negligence of the defendant, its agents, servants and employees, commingled and co-operated with the negligence of * * * John F. Greer and his servants, and was the proximate cause of plaintiff's injuries and damages." The judgment recited:

"That the plaintiff is entitled to recover of and from the defendant on the cause of action set out in plaintiff's original petition."

It will be noted that the petition does not allege that the injury was caused by an employee of the assured, neither does it make a charge equivalent thereto, but it alleges that the negligent acts of the defendant and its agents, commingled with and co-operated with the negligence of the independent contractor, caused the injury. The petition stated facts which showed that the said John F. Greer was an independent contractor, and that the injury occurred during the progress of work let to him, and in the absence of any statement in the petition to the effect that the injuries of plaintiff were caused by an employee of the insured, it stated a cause of action coming within the terms of the policy. The record does not contain the evidence offered upon which the judgment against the defendant was based, but the judgment recites that evidence was offered. In the trial of the garnishment proceedings, the court permitted the garnishee to offer evidence upon the question as to whether the injury was caused by an employee of the insured, and the plaintiff, without objection from the garnishee, was permitted to offer evidence in rebuttal of such evidence of the garnishee, and such evidence as a whole supports the conclusion that the injury was not caused by an employee of the insured.

It is also urged by the garnishee that there are no conditions under which the insured under the policy would be liable for injuries occurring during the progress of work let to an independent contractor, and it cites in support thereof the cases of Stroka v. Frankfort American Ins. Co. of New York, 94 N. Y. S. 501, and Rosenbloom v. Travelers' Ins. Co. of Hartford, Conn., 78 N. Y. S. 1135. With this contention we do not agree. The cited cases are clearly distinguishable from the instant case. In the case of Sroka v. Frankfort American Ins. Co. of New York, supra, it was said:

"As stated in the complaint, the defendant undertook to insure the plaintiff 'against loss from common-law or statutory liability arising from the contingent liability of the assured as owner of said building for damages on account of bodily injuries accidentally suffered by any person whatsoever in connection with and during the reconstruction, alteration or repairs of the building above mentioned * * * caused by the act or negligence of any contractor or subcontractor engaged in the reconstruction or alteration of the said building.' This somewhat elaborate verbiage is undoubtedly well calculated to induce a belief in the mind of a layman, unskilled in the law, that he is obtaining an insurance against something in return for the premium he pays. Really, however, the words are meaningless. The insurance is against 'contingent liability' for the act or negligence of a contractor or subcontractor. There is no such liability known to the law. The owner may be liable in a given case for the result of an accident, but his liability in such a case will be original and not contingent."

In the other New York case a policy similar to that in the Sroka Case was involved. The policy involved in the instant case is not against contingent liability for the act or negligence of a contractor or subcontractor, or at least is not limited to such liability, but it provides for insurance against the primary liability of the insured during the progress of work let to an independent contractor, or a subcontractor.

Under the facts in the instant case the insured was primarily liable for the injuries sustained by the plaintiff. The plaintiff, at the time of the injury, was an invitee upon the premises and was there to transact business with the defendant and not with the independent contractor. The liability of the defendant rested, not upon the negligence of the independent contractor, but upon its own negligence in failing to protect the plaintiff from the consequences of the negligence of the independent contractor. The early English case of Indemaur v. Dawes, L. R. 1 C. P. 274, 19 Eng. Rul. Cases, 64, stated the rule as follows:

"The authorities respecting guests and other bare licensees, and those respecting servants and others who consent to incur a risk, being therefore inapplicable, we are to consider what is the law as to the duty of the occupier of a building with reference to persons resorting thereto in the course of business, upon his invitation, express or implied. The common case is that of a customer in a shop; but it is obvious that this is only one of a class; for, whether the customer is actually chaffering at the time, or actually buys or not, he is, according to an undoubted course of authority and practice, entitled to the ex-

ercise of reasonable care by the occupier to prevent damage from unusual danger, of which the occupier knows or ought to know. * * * This protection does not depend upon a contract being entered into in the way of the shopkeeper's business during the stay of the customer, but upon the fact that the customer has come into the shop in pursuance of a tacit invitation given by the shopkeeper, with a view to business which concerns himself. * * * The class to which the customer belongs includes persons who go not as mere volunteers, or licensees, or guests, or servants, or persons whose employment is such that danger may be considered as bargained for, but who go upon business which concerns the occupier, and upon his invitation, express or implied."

The rule is stated by Cooley on Torts, 718, as follows:

"If one expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit. And this rule obtains and is recognized in both the English courts and in the courts of this country."

In a note to 23 A. L. R. 1009, the following rule is announced:

"The duty of a person in possession of land or other fixed property 'is to take reasonable care to keep his premises in such a state that those whom he invites to come thereon shall not be unduly exposed to danger.' This duty is absolute, and he cannot escape liability for an injury occasioned by its nonperformance, by showing that the immediate cause of the injury was the existence of a dangerous condition created by the fault of an independent contractor. The mere fact that he negligently failed to guard against it is sufficient to render him responsible."

In 39 C. J. 1336:

"Another exception to the general rule of nonliability of the contractee is that one on whom the law imposes a positive duty to the public or an individual cannot escape the responsibility of seeing that duty performed by delegating it to an independent contractor, and will be liable for injuries resulting from the contractor's negligence in the performance thereof. This rule applies with equal force whether the duty is imposed by common law or by statute, and it is of no consequence whether or not the owner exercised care in selecting the contractor."

This rule has been followed by this court. In the case of Minnetonka Oil Co. v. Haviland, 55 Okla. 43, 155 P. 217, this court said:

"We think that while the rule is well settled that one, who does work through the instrumentality of an independent contractor, is not liable for damages, caused by the negligent performance of such work by the independent contractor, to third persons, except where the work is inherently dangerous or unlawful, it is equally well settled that, where a person either by contract or by law owes an obligation to another, he cannot escape liability for negligence in the performance of such obligation by delegating the duty to an independent contractor."

The record supports the conclusion that the injury was not caused by an employee of the assured, but was caused by the negligence of an independent contractor of the defendant during the progress of his work, and also that the insured breached a duty owing to plaintiff for which the garnishee was liable under the policy.

Under the evidence in this case, which must be construed most favorably to the defendant in error, in passing upon the demurrer of the garnishee, the lower court was warranted in finding that the policy of insurance issued by the garnishee covered this class of loss; and that the lower court committed no error in overruling the demurrer of the garnishee and rendering judgment for the defendant in error.

The second question raised by the plaintiff in error in their brief is that the policy of insurance was canceled on the 20th day of May, 1931, and prior to plaintiff's injury.

Plaintiff in error by its evidence attempted to show that notice had been mailed from the home office in New York City to the Atlantic Pipe & Supply Company on the 13th day of May, 1931, notifying said company that the policy of insurance had been canceled, and that a copy of said notice had been mailed to plaintiff in error's agent at Tulsa, Okla., and a copy mailed to their branch office in Oklahoma City, Okla. The evidence of the defendant in error shows that said notice was never received either by the Atlantic Pipe & Supply Company, defendant, or by the agents and officers of the garnishee company.

Section 10495, Okla. Stats. 1931, provides that:

"Any policy issued by companies authorized to do business in this state may be canceled at any time at the request of the insured or by the company by giving five days' notice of such cancellation."

Under this section the court is of the

opinion that the burden is upon the garnishee to establish by competent evidence that they served due notice upon the Atlantic Pipe & Supply Company of the canceling of the policy. This we think the evidence failed to show, and we think the lower court was warranted in finding that the insurance policy was not canceled by the company prior to the accident complained of. The fact that the notice was not received by any of the parties to whom it was supposed to have been sent would create a presumption that the notice never was sent, at least, that the notice was not received by the defendant company, and under the above section of our statutes we believe that it is incumbent upon the insurance company to see that the insured received the notice of cancellation.

The company having made the post office its agent in delivering the notice to the pipe line company, the burden is upon it to prove to the satisfaction of the court that said notice was delivered.

The court is of the opinion that no error was committed by the lower court, and the judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys A. R. Carpenter, J. Wilford Hill, and Ira A. Hill in the preparation of this opinion: These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. A. R. Carpenter and approved by Mr. J. Wilford Hill and Mr. Ira A. Hill, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted, as modified.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and CORN, JJ., concur.