## MIDWESTERN INS. CO. v. CATHEY.
### No. 35338.

Supreme Court of Oklahoma.
May 26, 1953.

Rehearing Denied Oct. 27, 1953.

Savage, Gibson & Benefield, Oklahoma City, for plaintiff in error.

Hughey Baker, Tulsa, Schwoerke & Schwoerke; James E. Grigsby, Oklahoma City, for defendant in error.

Looney, Watts, Ross, Looney & Smith and Embry, Johnson, Crowe, Tolbert & Boxley, Ben L. Burdick, Oklahoma City, amici curia.

DAVISON, Justice.

Betty Cathey sued Harvey Johnson for the wrongful death of her husband resulting from an automobile collision. Harvey Johnson requested the Midwestern Insurance Company to defend the case because of an automobile policy Midwestern had issued insuring Johnson against such damages. Midwestern refused to defend the suit on the theory that the policy had been duly and timely cancelled for nonpayment of premiums.

After Cathey had obtained judgment against Johnson in the amount of $4,995, she proceeded in garnishment against Midwestern because of the automobile liability insurance policy which provided for a $5,000 coverage. The trial court sustained the garnishment and rendered judgment against Midwestern for the amount of the judgment and Midwestern has perfected this appeal.

The Midwestern Insurance Company, plaintiff in error, will be hereinafter referred to as Midwestern and Betty Cathey, defendant in error, will be referred to as Cathey.

The facts are not in dispute and the only question to be determined in this appeal is whether the liability policy, issued by Midwestern to Harvey Johnson, had been legally cancelled prior to the above referred to collision. An examination of the terms of the policy and the method and procedure on the part of Midwestern to perfect the cancellation of the policy are necessary for a determination of the question.

Midwestern's Standard Automobile Policy No. 16–14303, insuring Harvey Johnson, address 929 N.W. 13th, Oklahoma City, for policy period June 16, 1950, to June 16, 1951, was issued June 16, 1950. The annual premium was to be $39. Of this premium, only $10 was ever paid, a $5 payment on July 25, 1950, and a like payment on September 15, 1950.

On June 30, 1950, a statement for the premium then unpaid was mailed to Harvey Johnson, postage prepaid, to his policy shown address, 929 N.W. 13th. A like statement was mailed on July 31, August 31, September 15 and 30, October 16 and 31. None of these notices were returned by the postal authorities as undelivered.

The Midwestern policy form, involved herein, including the cancellation provision, was authorized and approved by the State Insurance Board of Oklahoma. The policy provides for the following method of cancellation:

"Cancellation. This policy may be canceled by the named insured by mailing to the company written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than five days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing."

In its endeavor to cancel the policy for the assured's continued failure to pay the premium, Midwestern, on November 28, 1950, mailed a notice to Harvey Johnson to the address shown in the policy, to-wit: 929 N.W. 13th Street, Oklahoma City, advising him that the policy was cancelled as of 12:01 A.M., December 4, 1950, for nonpayment of premium. The envelope containing this notice of cancellation was by the postal authorities postmarked November 28, 1950, at 6:30 P.M., and was returned to the sender on December 1, 1950 at 4:30 P.M., undelivered for the reasons as stated on the envelope "not here" and "unknown at address."

The accident which resulted in the death of Mrs. Cathey's husband occurred on January 26, 1951, after the policy was allegedly cancelled on December 4, 1950.

For reversal, Midwestern contends that the policy was cancelled in accordance with the terms of the contract by mailing notice of cancellation to the assured at the address designated in the policy and that such cancellation was effective and binding.

Cathey contends that the policy was not effectively cancelled because the insurance laws of Oklahoma, 36 O.S.1951 § 14, as interpreted by this court, particularly in the case of Great American Insurance Company v. Deatherage, 175 Okl. 28, 52 P.2d 827, requires actual delivery of the notice of cancellation to the assured.

The question as to whether parties to an automobile public liability policy are free to make such contract as they choose if it is not prohibited by statutes of the state or public policy is not here involved.

The general rule, supported by the great weight of authority, is to the effect that, under the crucial provision for cancellation contained in the policy herein, as applied to the facts herein, the policy was effectively cancelled.

The case of Gendron v. Calvert Fire Ins. Co., 47 N.M. 348, 143 P.2d 462, 464, 149

A.L.R. 1310, is very similar to the present case. The cancellation clauses in the cited case is almost identical with the clause involved herein. In that case, the court used the following language:

"Under the terms of the policy it is not necessary that the insured actually receive notice. So, it must be said that mailing is all that is required. Whether such notice be actually received by the insured is unimportant. Raiken v. Commercial Casualty Co., N.J.Sup., 135 A. 479; and Naify v. Pacific Indemnity Co., 11 Cal.2d 5, 76 P.2d 663, 115 A.L.R. 476. Where the insurer has strictly complied with the terms of the policy with reference thereto, failure to receive notice will not render the attempted cancellation ineffective. See Appleman on Automobile Insurance p. 476; Trinity Universal Ins. Co. v. Willrich, 1942, 13 Wash.2d 263, 124 P.2d 950, 142 A.L.R. 1; Frontier-Pontiac, Inc., v. Dubuque Fire & Marine Ins. Co., Tex.Civ.App., 166 S.W.2d 746."

Also see Medford v. Pacific National Fire Ins. Co., 189 Or. 617, 219 P.2d 142, 222 P.2d 407, 16 A.L.R.2d 1181; O'Daniel v. Michigan Mutual Liability Co., D.C., 88 F.Supp. 339; Gulf Insurance Co. v. Riddle, Tex.Civ. App., 199 S.W.2d 1000; 29 Am.Jur. 285; 123 A.L.R. 1014.

There is no ambiguity in the language of the policy as contained in the cancellation provision. Under the very strictest construction of the policy, the contrasting language is not of doubtful meaning. Neither can it be said that the provision is unreasonable or unjust. Under the provision, the assured assumed the risk of receiving the notice when properly mailed to him at the address given in the policy. Under a policy containing the provision involved herein, it would place an unreasonable and unfair burden on the company to say that notice of the cancellation must be actually delivered to the assured. To make such a requirement would be placing additional words in the policy far beyond the actual terms of the policy agreed to by the parties.

In the present case, the assured was approximately six months in arrears with the payment of his premium and he should have anticipated a cancellation thereof. He could have easily notified the company of any change of address from that given in the policy.

Mrs. Cathey relies on two cases for affirmance, namely, Farmers Insurance Exchange v. Taylor, 10 Cir., 193 F.2d 756, and Great American Insurance Company v. Deatherage, supra. Both of these cases are distinguishable from the case at bar.

In the Deatherage case the real issue was whether or not the insurance company ever mailed the notice of cancellation. Evidence was offered by the insurance company to show the method of handling cancellations and to show that the records in the home office indicated that a notice of cancellation had been handled in the usual and customary way, and then offered testimony showing that the notice of cancellation which had been presumably mailed had never been returned. In that case, the court held that the testimony of the insured, that the notice of cancellation had not been received, was sufficient to overcome the presumption created by the insurance company to the effect that the notice had been mailed. In the present case there can be no question of the mailing of the notice of cancellation because the envelope containing the notice was returned by the postal authorities indicating the reason shown above for its return. This returned envelope and notice of cancellation are a part of the evidence in the present case. We have no fault to find with the Deatherage case, except that some of the dictum might be misleading.

In the case of Farmers Insurance Exchange v. Taylor, supra, the trial court submitted to the jury an interrogatory on the question of whether or not the notice of cancellation was mailed and the jury found that it was not. That case is distinguishable from the case at bar for the same reason as given in the paragraph last above referred to.

The procedure followed by Midwestern in the present case was sufficient to cancel the policy.

The judgment is reversed with directions to enter judgment for plaintiff in error.

HALLEY, C. J., JOHNSON, V. C. J., and WILLIAMS, and BLACKBIRD, JJ., concur.

O'NEAL, J., concurs in result.

CORN, J., dissents.