Walter B. SHELBY, Plaintiff in Error,

v.

HUDIBURG CHEVROLET, INC., a Domestic Corporation, Defendant in Error.

No. 38915.

Supreme Court of Oklahoma.

Jan. 24, 1961.

Rehearing Denied April 25, 1961.

Davis & Hamilton, Oklahoma City, for plaintiff in error.

Morgan & Ferrish, by Francis G. Morgan, Oklahoma City, for defendant in error.

PER CURIAM.

This is an appeal by plaintiff, Walter B. Shelby, from an order of the trial court sustaining defendant's demurrer to plaintiff's evidence, in an action to recover actual and exemplary damages in the sum of $3,750 for the alleged conversion of an automobile by defendant, Hudiburg, Inc.

The decisive question is whether plaintiff's evidence, construed most favorably to plaintiff, is sufficient to entitle plaintiff to any relief as against the defendant. Colorado Interstate Gas Co. v. Wheeler, Okl., 344 P.2d 1055; Brown v. Wrightsman, 175 Okl. 189, 51 P.2d 761.

The pertinent evidence adduced by plaintiff is summarized as follows:

On May 30, 1958, plaintiff went to defendant's place of business and purchased a Model 1955 Chevrolet Station Wagon through one of defendant's salesmen, at a

price of $1,595, trading in a 1952 Dodge Sedan for an allowance of $395, resulting in a cash balance of $1,200. A conditional sales contract was entered into by and between plaintiff and defendant, showing a total time balance, including insurance and finance charges, of $1,560.40. This contract provided that plaintiff would pay $100 on June 16, 1958, and the balance in twenty-four payments of $60.85, commencing July 4, 1958.

It was understood by the parties that the time balance would be financed through a certain automobile finance company, and the conditional sales contract was assigned by defendant to that company, with recourse, defendant guaranteeing payment of the full amount of the balance on demand of the finance company.

Plaintiff took immediate possession of the vehicle, and on June 16, 1958, drove the car to the State of Kansas, returning on June 21. Plaintiff did not pay the $100 due on June 16th. In the meantime, plaintiff received by mail the certificate of title to the vehicle, assigned to plaintiff, the collision insurance policy and credit life insurance certificate, and a payment booklet showing the payments due as set out in the conditional sales contract.

About ten o'clock on the morning of June 21st, plaintiff and his wife were at plaintiff's mother's home when the salesman who sold plaintiff the Model 1955 Chevrolet Station Wagon, entered the home and demanded the car or the total amount due, $1,560. Plaintiff offered to pay the $100 which had become due on June 16th, which the salesman refused. Plaintiff testified that "he said also that he was going to take the car. I said, 'Why?' He said, 'Your credit ain't worth a damn.'" Plaintiff told the salesman that he had received the booklet from the finance company, and the salesman stated that that didn't mean anything. Plaintiff then went to his brother's home to telephone an attorney. When he returned, the salesman and plaintiff's wife were at the automobile, parked in the front yard, and plaintiff's wife had removed their personal belongings from the automobile. Plaintiff testified that the salesman said that "I might as well go ahead and give it to him because he was going to take it anyway." The salesman then got into the automobile and drove it away.

Plaintiff took no further action at that time. Under date of June 23, 1958, plaintiff received a letter from defendant stating that the automobile was repossessed as a result of plaintiff's having been delinquent and defendant's having requested the total balance due; that the net amount required to pay the finance company in full, after credit on the finance charges and insurance charges was $1,315.21, and that defendant would hold the car "for you" for ten days. The letter also stated that "This means that it will be necessary for you to negotiate a new loan or pay for same out of your current funds."

This action was instituted by petition filed on July 2, 1958.

 In urging reversal of the order of the trial court sustaining a demurrer to plaintiff's evidence, plaintiff contends in Proposition I of his brief that the defendant's action was wrongful and constituted a conversion of plaintiff's motor vehicle, inasmuch as the defendant had assigned all its right, title and interest in and to the conditional sales contract to the finance company and therefore had no legal right to demand the possession of the vehicle or the total balance due.

With this contention, we agree.

It is well-settled that the seller under a conditional sales contract who becomes entitled to repossession of the property sold upon default of the buyer, as provided by the contract, may repossess the property, provided he does not use force, threats, violence, or other similar methods constituting a breach of the peace. Leedy v. General Motors Acceptance Corp., 173 Okl. 445, 48 P.2d 1074; Cecil Baber Electric Co. et al. v. Greer, 183 Okl. 541, 83 P.2d 598; Edge v. Smith, Okl., 284 P.2d 711, 53 A.L. R.2d 929; General Motors Acceptance Corp. v. Vincent, 183 Okl. 547, 83 P.2d 539.

The conditional sales contract in the instant case, Defendant's Exhibit 1, reserves title to the property in the seller until the balance is paid and authorizes the seller, upon default of the buyer, to take immediate possession of said property without legal process. The contract further provides, however, that "In the event of the transfer and assignment of seller's rights hereunder, the word 'seller' shall be understood as referring to the subsequent holder of this contract under such transfer and assignment, except as may be otherwise particularly stated herein."

The contract in the instant case bears an assignment of defendant's right, title and interest in and to the contract and the property covered thereby to the finance company, with recourse.

A similar situation was presented in Murrell v. Griswold, Okl., 338 P.2d 150. Therein, in March, 1954, plaintiff had sold to defendant a tap room, including fixtures and inventory, defendant paying a down payment and executing a note and chattel mortgage for the balance. Plaintiff then sold and assigned the note and mortgage to a bank, with recourse, and defendant thereafter paid monthly instalments to the bank, and paid the building rent direct to the building owner. In July, 1955, defendant's beer license was cancelled, and defendant locked the tap room and went on a vacation. Upon learning that the tap room had been locked, and that defendant had not paid the August, 1955, instalment to the bank or the building rent for that month, plaintiff, with the help of a locksmith, entered the tap room, thus gaining possession of the business and personal property. Plaintiff subsequently attempted to foreclose the chattel mortgage which plaintiff had assigned to the bank, and at the sale bid in the chattels at $500.

Plaintiff then brought action against the defendant for the balance due on the note after crediting defendant with the proceeds of the sale. Defendant filed an answer and cross-petition, and the jury returned a verdict for defendant on his cross-petition in the amount of $2,000 actual and $300 exemplary damages, on which judgment was entered. The trial court instructed the jury that plaintiff was guilty of conversion, as a matter of law.

In affirming judgment for defendant, we said, at page 153 of the opinion:

"We are of the opinion that the trial court correctly instructed the jury that plaintiff, as a matter of law, was guilty of converting the tangible personal property located in Anchor Tap Room at the time he took possession of said property without the knowledge or consent of defendant."

"In Sisler v. Smith, Okl., 267 P.2d 1081, it is pointed out that the 'mere illegal taking or wrongful assuming of right to personal property constitutes conversion and that no further step is necessary to perfect the right of action therefor.' First National Bank of Pocasset v. Melton & Holmes, 156 Okl. 63, 9 P.2d 703; and the fact that owner was indebted to wrongdoer is no defense, Caldwell v. Carpenter, 109 Okl. 63, 234 P. 767.

"At the time plaintiff took possession of the tangible property located in Anchor Tap Room, defendant was indebted to the bank and not to plaintiff, and the bank and not plaintiff owned the mortgage given to secure the note when plaintiff had endorsed with recourse to the bank. * * *

" * * * As pointed out, the bank and not plaintiff owned the mortgage at the time plaintiff took possession of the property located in Anchor Tap Room. Moreover, it was provided in the mortgage that the mortgagee should have 'the right to take immediate possession of the same and to *foreclose this mortgage.*"

In United States Zinc Co. v. Colburn, 124 Okl. 249, 255 P. 688, we said, in the syllabus:

"1. Conversion is any distinct act of dominion wrongfully exerted over another's personal property, in denial

of, or inconsistent with, his rights therein.

"2. Any distinct act of dominion, wrongfully exerted over the property of another and in denial of his rights or inconsistent therewith, may be treated as a conversion, and it is not necessary that the wrongdoer apply the property to his own use. And when such conversion is proved, the plaintiff is entitled to recover, irrespective of good or bad faith, care or negligence, knowledge or ignorance."

In the instant case, we are of the opinion that the evidence is sufficient to support a finding that defendant, having assigned its right, title and interest to the conditional sales contract and property covered thereby, had no legal right to take possession of said property, and therefore converted same.

■ Defendant contends that the conditional sales contract shows that it was released by the finance company. The contract does bear a notation to the county clerk, signed by the finance company, authorizing the release of the "mortgage"; however, it is not dated, and in considering the action of the trial court in sustaining a demurrer to plaintiff's evidence, we are bound to construe same most favorably to plaintiff, together with all inferences and deductions that may reasonably be drawn therefrom. Riveer v. Thorton, 202 Okl. 96, 210 P.2d 366. We therefore infer that the release of the "mortgage" by the finance company was subsequent, and not prior, to the repossession of the vehicle by defendant.

■ Defendant next contends that there is no evidence that the salesman who took possession of the vehicle was then an agent or employee of defendant. He was the same salesman who sold the car to plaintiff, and the letter from defendant to plaintiff dated June 23, 1958, states that "on June 21, 1958, you gave us the 1955 Chevrolet Station Wagon #B55K121710. This was as a result of your being delinquent and our requesting payment of same in full." We hold the evidence sufficient to support a finding that the salesman was acting as defendant's agent in repossessing the vehicle.

Defendant next contends that "In plaintiff's Proposition III to his First Assignment of Error and at the beginning of said proposition at page 10 of his brief, plaintiff concedes defendant's right under the Conditional Sales Contract to repossess the property."

We think it clear that plaintiff conceded the above fact only in the alternative, and for the purpose of that proposition, only. On page 8 of his brief, plaintiff contends that the assignee, not the assignor, has the right to repossess, and that unless defendant's employee was acting as the agent of the finance company (assignee) plaintiff would be entitled to a directed verdict for the wrongful conversion of his property.

■ Finally, defendant contends that there was no trespass, threats, or the taking of the motor vehicle without plaintiff's consent. Inasmuch as we have concluded that, according to the evidence in the record, defendant had no legal right to assert dominion or ownership over the vehicle, the rules applicable to the rights of the holder of a conditional sales contract or chattel mortgage to repossess the property have no pertinency here, except as to the question whether plaintiff consented to the taking.

The evidence in this connection tends to show that, immediately after the salesman demanded the vehicle or the balance due, plaintiff went to the home of his brother to seek legal advice, and that he was generally unwilling for the salesman to take the car; that the salesman told plaintiff that plaintiff might as well give him the vehicle because he was going to take it anyway.

In Ben Cooper Motor Co. v. Amey, 143 Okl. 75, 287 P. 1017, we held that a man is not required to use physical force to resist the taking of his property by another; that the circumstances of each case must be considered in determining whether the taking was without the consent of the own-

er, and that generally it is a question for the jury.

We think the evidence in the instant case was sufficient to warrant submission of the question of consent to the jury.

We conclude that the trial erred in sustaining defendant's demurrer to plaintiff's evidence, as to both causes of action.

The order sustaining defendant's demurrer to plaintiff's first and second causes of action is reversed, with directions to grant a new trial.

WILLIAMS, C. J., and DAVISON, HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.

The Court acknowledges the aid of Supernumerary Judge N. S. CORN in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the court.