**Augustine CAHILL and Dorothy Cahill, Appellants,**

v.

**Tom WAUGH, d/b/a the Pancake Place, Appellee.**

**No. 63607.**

Court of Appeals of Oklahoma, Tulsa Division.

April 8, 1986.

As Corrected April 17, 1986.

Rehearing Denied May 6, 1986.

Certiorari Denied July 8, 1986.

**722**

Michael J. King, Tulsa, for appellants.

Joseph A. Sharp, Lynn A. Summers, Best, Sharp, Thomas, Glass & Atkinson, Tulsa, for appellee.

BRIGHTMIRE, Judge.

Was it error to withdraw from jury consideration one of plaintiffs' theories of recovery for injury sustained while leaving defendant's restaurant when hit by a missile shot from a lawn mower operated by defendant's yard man? We hold it was and reverse.

**I**

One day during the summer of 1983, plaintiff Augustine Cahill and a co-worker were breakfast guests at a restaurant called The Pancake Place, owned and operated by defendant Tom Waugh in Tulsa, Oklahoma. They finished eating, paid for the meal, and had just passed through the entrance of the cafe when suddenly plaintiff's leg was struck by a projectile thrown from a lawn mower being operated in a rock garden area some four or five feet away causing a fairly serious open wound. The mower operator, an elderly man by the name of Streeter, said that after the rock hit plaintiff he saw a red spot on plaintiff's leg with blood trickling out. Defendant's manager sent plaintiff to the nearby Hillcrest hospital saying, "We'll take care of it."

At the time in question Streeter was operating the mower near the cafe entrance in a five foot wide rock-filled terrace which extended along the front and side of the building. Using a power lawn mower in this terrace area was his "normal practice," which he said he had followed for a long time. The manager could see him out there mowing over the rock-laden area through glass doors and windows and Streeter was sure that the manager had seen him doing so. Nevertheless, neither defendant Waugh nor his manager ever said anything to him about how, where or when he was supposed to mow until after the accident in question. At that time he was told by the manager to stop mowing

during breakfast and lunch hours but at Streeter's request Waugh countermanded such order. Would Streeter have followed mowing instructions concerning where and when to mow? "Sure," he said, "he's paying me."

Defendant Waugh testified he hires a manager to run the restaurant. The defendant also said he had seen Streeter use his mowers and other equipment but denied having seen him mow the terrace even though he mowed it weekly and could be seen doing so through the glass entrance doors and spacious windows.

With regard to the care exercised by defendant Waugh to avoid exposing his invitees to danger, he said he never took any steps himself or instructed Streeter to do or not do anything with respect to the mowing task in an effort to prevent exposing patrons to the dangers inherent in operating a power lawn mower in and about the premises. More specifically, he never asked or instructed Streeter not to mow in the vicinity of the entrance or the parking lot during business hours. His reason? "The only thing I cared about controlling was the job that he did, the finished product," defendant said.

Further evidence regarding defendant's concern for the safety of his invitees is the countermanding of his manager's order, as we mentioned earlier, directing Streeter not to mow during busy business hours. Streeter testified in deposition that he called "Mr. Waugh about it" and he said, "Well, you go on down there and do it like you've been doing...."[1]

At the close of plaintiffs' evidence the trial court said this in ruling on defendant's demurrer:

"Well, I think that as far as the premises, the liability argument is concerned, your demurrer is good, but I think the jury is going to have to decide on the question of agent because I think it's conflicting. I think going to the premises, the liability, I'm going to sustain the demurrer. I think, based on the facts presented here, that this defendant neither knew or should have known the circumstances that this was a dangerous condition."

Defendant proceeded to present evidence on the "agency" issue. When both sides rested each moved for a directed verdict and both motions were overruled.

## II

The first major problem we see with the trial court's midtrial ruling is treating the plaintiffs' petition as if it stated two causes of action. Admittedly, the plaintiffs labeled them so but the legal fact of their pleading is that they stated only one cause of action—for damages resulting from defendant's tortious conduct—but pleaded two theories of liability, namely, vicarious and direct or personal. The attempt to sustain a demurrer to part of plaintiffs' case in chief was ineffective and at the most amounted to a premature decision not to permit the jury to pass on plaintiffs' personal or "premise" liability theory as it was called.

The instructions indicate that that is what happened. The only theory submitted for the jury's consideration was of defendant's vicarious liability. And even in this regard an instructional contradiction of a rather fundamental nature occurred. In instruction No. 8 the trial judge submitted to the jury, as a disputed issue of fact, the matter of whether Streeter was acting as an agent for defendant at the time the injury occurred. The court told the jury that if he was an agent then Streeter's acts and omissions were considered by law to be defendant's. But in instruction No. 9 the trial judge introduced a new legal status, that of an independent contractor, and as though that status was incongruous with that of an agency, directed the jury as follows:

---

1. Agent Streeter was unable to recall this admission against defendant's interest at time of trial and the admission was not offered in evidence.

"If you find that Joseph Streeter was an independent contractor, then your verdict *must* be for the *defendant.*

If you find that Joseph Streeter was an agent of the defendant and not an independent contractor, then your verdict *must* be for the *plaintiffs.*" (Emphasis added.)

■ To begin with the status of agency and of independent contractor are not mutually exclusive. By definition an independent contractor is an agent in the broad sense of that term in that he undertakes, at the request of another, to do something for the other. *See C.M. Keys Commission Co. v. Miller,* 59 Okl. 42, 157 P. 1029 (1916); *Gorton v. Doty,* 57 Idaho 792, 69 P.2d 136 (1937). More particularly an independent contractor is an independent agent if he contracts to do a certain thing according to his own methods and without being subject to control of the principal except as to the result of the work. *Donray, Ltd. v. United States,* 301 F.2d 200, (9th Cir.1962).

■ The undisputed evidence here is that Streeter performed the landscape work for defendant and by his own admission subjected himself to the control of defendant concerning when and how the work was to be performed. Since defendant conceded during oral argument that plaintiff's injury arose from Streeter's negligence, there was really no disputed issue of fact with regard to the defendant's vicarious liability for the jury to decide.

### III

■ The second significant error committed by the trial court was removing the issue of defendant's own negligence from the lawsuit—an error which was compounded by directing the jury to find for defendant if it found Streeter was an independent contractor. Such status does not invariably shield a landowner from liability to those he invites to come upon his premis-

es. True, the general rule is that a contractee is ordinarily not liable for losses generated by his independent contractor's torts. But there are several recognized exceptions.[2] One was adopted by the court in *Great American Indemnity Co. v. Deatherage,* 175 Okl. 28, 52 P.2d 827 (1936), namely, that one who invites another to his premises "owes a positive duty ... to take reasonable care to keep his premises in such a state that the invitee shall not be unduly exposed to danger, and he cannot escape liability for an injury occasioned by its nonperformance, by showing the immediate cause of the injury was due to the negligence of an independent contractor." "This duty," continued the court, "is absolute.... [t]he mere fact that he negligently failed to guard against it is sufficient to render him responsible."

In other words *Deatherage* embraces a widely recognized exception that the duty a landowner owes his invitee is non-delegable, *i.e.,* responsibility for its performance cannot be avoided by delegating it to a contractor. Moreover, the court added, the rule applies "with equal force whether the duty is imposed by common law or by statute, and it is of no consequence whether or not the owner exercised care in selecting the contractor." *See also Minnetonka Oil Co. v. Haviland,* 55 Okl. 43, 155 P. 217 (1916).

■ Operating a power mower poses a danger under the best of circumstances. Operating one in the close proximity of man or beast is even more dangerous. And running one over a bed of pebbles near the entrance of a public restaurant during business hours is, we think, extremely dangerous and an unwarranted exposure of defendant's patrons to an unreasonable hazard.

In this case one witness testified he had come out of the restaurant while such mowing was being done by Streeter and he

---

**2.** Several exceptions to the general rule of non-liability, for example, are summarized in *Janice v. New York,* 201 Misc. 915, 107 N.Y.S. 2d 674 (1951), and include: (1) work which is of such a nature that injury will result unless extra pre-cautions are taken by the owner; (2) work which is inherently dangerous; (3) a nondelegable duty to avoid exposure of an invitee to danger; and (4) failure of the principal to exercise care in selecting a competent contractor.

heard one or more stones hit cars parked nearby. Defendant knew the terrace was filled with rocks. His statement that he never saw Streeter mowing on the rocks during the years Streeter was employed, though incredible, furnished no shield from liability. Whether he knew or not, he knew a power mower was being used on the cafe premises in areas where his patrons would be and therefore he had a duty to see that his guests were not exposed to the dangers inherent in such mowing.

## IV

The judgment appealed is reversed and the cause is remanded for a new trial.

RAPP, J., concurs.

MEANS, P.J., dissents.

MEANS, Presiding Judge, dissenting.

This appeal was placed on the Accelerated Docket for early disposition. Oral argument was held on March 1, 1986.

Plaintiffs appeal from the trial court's order which sustained Defendant's demurrer to the evidence. Having reviewed the record and applicable law, I would affirm.

In July 1983, Plaintiff was injured when he was hit in the leg by an object which was thrown from a lawn mower. Cahill had just left Defendant's restaurant and was on Defendant's premises when he was injured. The mower was owned and operated by Joseph Streeter, employed by Defendant as an independent contractor to do the yard work surrounding the restaurant. At the time of Cahill's injury, Streeter was mowing in an area referred to as a "rock garden."

Cahill sued Defendant Waugh, as owner of the restaurant, but did not name Streeter as a defendant in the lawsuit. The case was tried on theories of premises liability and respondeat superior. The case went to the jury on the respondeat superior issues and the jury returned a verdict in favor of Defendant, implicitly finding that Defendant was not responsible for the actions of Streeter. Defendant entered a demurrer to Cahill's evidence concerning premises liabil-

ity. The court found that there was no evidence to show that Defendant had any knowledge, either actual or constructive, of the allegedly dangerous condition and sustained the demurrer. Cahill has appealed from the order sustaining the demurrer, but has not appealed the jury verdict.

A demurrer to the evidence is properly sustained if there is no evidence reasonably tending to support the plaintiff's cause of action. *Wilson v. Chicago, Rock Island, & Pacific R.R.,* 429 P.2d 763 (Okla.1967). Where there is no competent evidence reasonably tending to support the plaintiff's case, a judgment of the trial court sustaining a demurrer to the evidence will not be reversed. *Pitts v. First State Bank,* 390 P.2d 867 (Okla.1963). The decisive question is whether Cahill's evidence, construed most favorably to Cahill, is sufficient to entitle him to any relief against Defendant. *Shelby v. Hudiburg Chevrolet, Inc.,* 361 P.2d 275, 276 (Okla.1961)(per curiam). A review of the evidence in the instant case shows that the demurrer was properly sustained.

In order for Cahill to reach the jury on the issue of premises liability, the elements as set out in *Rogers v. Hennessee,* 602 P.2d 1033 (Okla.1979), must first be met. As in *Rogers,* the parties here are in an invitor-invitee relationship. The court stated Defendant's duty in the following:

> The law casts on the invitor the duty to exercise reasonable care to keep the premises in a reasonably safe condition and to warn invitees of conditions which are in the nature of hidden dangers, traps, snares, pitfalls and the like. All normal or ordinary risks incident to the use of the premises are assumed by the invitee. No liability arises for any injury resulting from dangers which are so apparent or readily observable that one would reasonably expect them to be discovered. Moreover, failure to remove known but obvious hazards by alteration or reconstruction of the premises constitutes no breach of duty.

*Id.* at 1034 (footnotes omitted).

In the instant case, as in *Rogers,* there was no proof that Defendant knew Streeter

was mowing in the rock garden. Although Defendant Waugh testified that Streeter had been performing the mowing and yard work at The Pancake Place for quite some time, he stated that he had never seen him using a mower in the rocky area. The restaurant manager who was working that morning had never noticed Streeter mowing in that area. Like the plaintiff in *Rogers*, Cahill would have this court infer Defendant's lack of due care from Streeter's testimony that he had used the mower there before. However, there is no evidence that Defendant had any knowledge of Streeter's mowing in the rocky area, nor of the length of time that he had been operating the mower on the morning of the accident. As in *Rogers*, there is no evidence tending to show at the *critical time and place* that the owner had knowledge, actual or constructive, of the offending defect or was negligent in failing to discover it. There is no evidence that Defendant had any knowledge at any time that Streeter had ever operated the mower improperly.

Assuming all Cahill's facts as true, there is still no evidence which tends to show that at the time of the accident, Defendant had any knowledge, actual or constructive, that Streeter was operating the lawn mower in close proximity to the entrance and in the rocky area. Likewise, there is no evidence to tend to show that Defendant was negligent in its failure to discover Streeter's actions. The trial court properly sustained the demurrer.