Dear Director, Maynard
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following questions:
1. To what extent, generally, do state employees enjoyimmunity from suit under the Oklahoma Governmental Tort ClaimsAct, 51 O.S. 151 (1989) et seq.?
 2. Are physicians who are employed by the Oklahoma Departmentof Corrections, generally, considered "employees" as definedunder the Oklahoma Governmental Tort Claims Act, and do theytherefore enjoy the same immunity?
 I. STATUS OF STATE EMPLOYEES UNDER THE OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT.
¶ 1 The Oklahoma Governmental Tort Claims Act, found at 51O.S. 151 (1989) et seq., provides the exclusive remedy for recovery against the State for the tortious conduct of state employees.[1] The Act provides, generally, that state employees, acting within the scope of their employment, are immune from tort liability, and that the State alone shall bear responsibility for tort liability, as may be limited by the Act. Title 51 O.S. 152.1 (1989) provides, in pertinent part:
 A. The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its, political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts.
 B. The state, only to the extent and in the manner provided in this act, waives its immunity[.]
(Emphasis added).
¶ 2 The State's liability, under 51 O.S. 153(A) (1989), is further limited to:
 loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in this act and only where the state . . . if a private person or entity, would be liable for money damages under the laws of this state.
(Emphasis added).
¶ 3 Thus, both the immunity of individual employees of the State, under 51 O.S. 152.1(A) (1989), and the liability of the State, under 51 O.S. 153(A) (1989), are contingent upon the employee acting within the scope of his or her employment. Scope of employment is narrowly defined under the Tort Claims Act as follows:
 "Scope of employment" means performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned by a competent authority . . . but shall not include corruption or fraud.
51 O.S. 152(9) (1989).
¶ 4 Whether an employee is acting within the scope of his employment is usually a question of fact, and not the proper subject of an Opinion of the Attorney General. In accordance with the definition under the Act, however, any "employee," lawfully doing his job, in good faith, would likely be performing within the scope of his state employment. For purposes of your questions it will be presumed that the statutory and factual requirements have been satisfied which place the employee in question within the scope of his or her state employment.
¶ 5 The effect of the sovereign immunity afforded to state employees under the Tort Claims Act includes not only protection from liability exposure, but also suit immunity, which is emphasized under other provisions of the Act which require the claimant to name only the State as the proper party defendant in an action. See, 51 O.S. 163(C) (1989). Similarly, common-law sovereign immunity entitled individual governmental employees named as defendants to an early dismissal or judgment in their favor. Williams v. State, 678 P.2d 259 (Okla. 1984); Neal v.Donahue, 611 P.2d 1125 (Okla. 1980); and Fox v. OklahomaMemorial Hospital, 774 P.2d 459 (Okla. 1989). Suit immunity shields the immune defendant, not only from liability exposure, but also from other adverse consequences inherent in having to engage in litigation of the matter. Mitchell v. Forsyth,472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).
¶ 6 The presence of immunity will not necessarily prevent a plaintiff from instituting an action against an employee of the state, even in the absence of controversy concerning his employment status. Ordinarily, such suits are disposed of prior to trial. The immunity afforded to state employees under the Tort Claims Act has a limited application to tort actions filed in state court, under state law, and does not impact an employee's potential liability, if any, which might arise under federal law, including the Civil Rights Act, at 42 U.S.C.A. 1983.
¶ 7 The answer to your first question, then, is that state employees who are acting within the scope of their state employment, as defined under the Oklahoma Governmental Tort Claims Act, 51 O.S. 152(9) (1989), are immune from tort liability for conduct arising out of that employment.
 II. THE STATUS OF PHYSICIANS EMPLOYED BY THE OKLAHOMA DEPARTMENT OF CORRECTIONS UNDER THE OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT, 51 O.S. 152(5) (1989).
¶ 8 The term "employee" is defined, generally, within the provisions of the Oklahoma Governmental Tort Claims Act, at 51O.S. 152(5) (1989), as follows:
 "Employee" means any person who is authorized to act in behalf of a political subdivision or the state whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time or part-time basis. Employee also includes all elected or appointed officers, members of governing bodies and other persons designated to act for an agency or political subdivision, but the term does not mean a person or other legal entity while acting in the capacity of an independent contractor or an employee of an independent contractor.
(Emphasis added).
¶ 9 Under this general definition, every employee and agent of the State is covered under the Tort Claims Act, without regard for the employee's professional status. The specific exclusion of a person working in an independent contractor capacity is a reaffirmation of the common law in Oklahoma that an employer will not be held liable for the torts committed by an independent contractor. Hudgens v. Cook Industries, Inc., 521 P.2d 813
(Okla. 1974). This rule is further confirmed under 51 O.S.155(18) (1989), which provides that the State shall not be liable for a loss or claim resulting from an act or omission of an independent contractor.
¶ 10 Whether someone acts as an employee or an independent contractor is a question of fact, and not the proper subject of an opinion of the Attorney General. Murrell v. Goertz,597 P.2d 1223 (Okl.App. 1979). In considering the question, however, the trier of fact will weigh all factors, including the degree of control being exercised over the agent, in fact. Cahill v.Waugh, 722 P.2d 721 (Okl.App. 1986); Hunter Const. Co. v.Marris, 388 P.2d 5 (Okla. 1963). A written contract with a doctor is merely an indication of such an independent contractor relationship, and the mere existence of such a contract is not necessarily determinative. Texaco, Inc. v. Layton, 395 P.2d 393
(Okla. 1964). For purposes of analysis of your question, it will be presumed that the physicians in question are employees, in fact, rather than independent contractors.
¶ 11 Within the same definition, in the few sentences immediately following the general statutory employee definition cited above, a set of special rules is established which applies to limited categories of physicians. Title 51 O.S. 152(5) (1989), continues:
 For the purpose of this act, physicians acting in an administrative capacity, resident physicians and resident interns participating in a graduate medical education program of the University of Oklahoma College of Medicine or the Oklahoma College of Osteopathic Medicine and Surgery and faculty members of the University of Oklahoma College of Medicine and the Oklahoma College of Osteopathic Medicine and Surgery, while engaged in their teaching duties are employees of the state. Physician faculty members of the University of Oklahoma College of Medicine and the Oklahoma College of Osteopathic Medicine and Surgery not acting in an administrative capacity or engaged in teaching duties are not employees or agents of the state. However, in no event shall the state be held liable for the tortious conduct of any physician, resident-physician or intern while practicing medicine or providing medical treatment to patients.
(Emphasis added).
¶ 12 Under the last half of this definition of "employee," three categories of physicians are specifically defined to be "employees of the state," while they are "engaged in their teaching duties." These categories are: (1) physicians acting in an administrative capacity; (2) resident physicians and resident interns participating in a graduate medical education program of the University of Oklahoma College of Medicine or the Oklahoma College of Osteopathic Medicine and Surgery, and (3) faculty members of the University of Oklahoma College of Medicine and the Oklahoma College of Osteopathic Medicine and Surgery. The definition goes on to specify that physician faculty members (category (3) above) not acting in an administrative capacity or engaged in teaching duties are not employees of the state. Thus, under this definition, the only category of physicians specifically excluded from being state employees is physician faculty members not engaged in teaching or not acting in an administrative capacity.
¶ 13 The final sentence of the "employee" definition states that in no event shall the state be held liable for the tortious conduct of any physician, resident physician or intern while practicing medicine or treating patients. This proviso, couched in terms of the state's own liability, rather than a re-definition of who is or is not an employee, may limit the State's own liability exposure for medical negligence, generally, but has no direct impact on the question of who may be an "employee" for purposes of your questions. If the sentence is taken out of context of the rest of the paragraph it might be construed to mean that the state would never suffer liability exposure due to medical negligence; however, such an interpretation would result in an irreconcilable conflict with other provisions of the Act.
¶ 14 Under 51 O.S. 154(A)(2) (1989), for example, the limits of the State's liability is established to be two hundred thousand dollars ($200,000.00) for the Medical Center and State Mental Health Hospitals operated by the Department of Mental Health for "claims arising from medical negligence." An interpretation of the definitions section which precludes the State's liability for medical negligence conflicts with this provision which so clearly provides for that contingency. This conflict results in an ambiguity which must be resolved by resort to the rules of statutory construction. Matter of PhillipsPetroleum Co., 652 P.2d 283 (Okla. 1982).
¶ 15 The primary consideration in the judicial search to discover the correct meaning of a statute is the intent of the Legislature. Lekan v. P L Fire Protection Co., 609 P.2d 1289
(Okla. 1980). Statutes should be construed to avoid conflict between provisions. See, Rea v. Big Chief Drilling Company,673 P.2d 515 (Okl.App. 1983), wherein the Court stated:
 Where general terms or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part, the particular provisions will be given effect, as clearer and more definitive expressions of the legislative will.
673 P.2d at 519.
¶ 16 Utilizing this rule, the ambiguity is resolved by interpreting the final sentence of 51 O.S. 152(5) (1989), with reference to the two sentences which immediately precede it. Thus, it will impact the state's liability only as it relates to those specifically defined categories of physicians in those other sentences. The final sentence, hence, has no impact on the question of whether state employee physicians, not otherwise included within these categories, are "employees" under the definition of the Tort Claims Act. With regard to physicians employed by an agency which is not regularly engaged in the business of teaching, such as yours, the special rules defined under the last part of the definition of 51 O.S. 152(5) (1989), are inapplicable.
¶ 17 In answer to your second question, therefore, physician employees of the Oklahoma Department of Corrections are covered "employees" under the general provisions of the Oklahoma Governmental Tort Claims Act.
¶ 18 It is, therefore, the official opinion of the AttorneyGeneral that:
 1. State employees, who are acting within the scope of theirstate employment, as defined under the Oklahoma Governmental TortClaims Act, 51 O.S. 152(9) (1989), are generally immune fromtort liability for conduct arising out of that employment.
 2. Physician employees of the Oklahoma Department ofCorrections are covered "employees" under the general provisionsof the Oklahoma Governmental Tort Claims Act.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
CATHY CLINTON BARNUM ASSISTANT ATTORNEY GENERAL
[1] The scope of this opinion will be limited to issues raised in the context of tort liability under state law, and will not address the liability and indemnity questions associated with civil rights liability of state employees arising under federal law. This opinion does not address the special problems which arise when dealing with resident physicians and/or interns.